[Civ. No. 28147. Second Dist., Div. Two. Dec. 16, 1964.]

In re EUGENE WEINGAND for Change of Name. EUGENE WEINGAND, Petitioner and Appellant, v. ANNE-MARIE LORRE, as Administratrix, etc., Objector and Respondent.

Gemmil & Welborn and John A. Welborn for Petitioner and Appellant.

Shutan & Pitt and Alan S. Pitt for Objector and Respondent.

KINCAID, J. pro tem.*—Appellant Eugene Weingand appeals from the judgment ("Order") entered herein (1) denying appellant's petition for change of name, and (2) permanently restraining petitioner from using the name Peter Lorie in either his personal or business activities unless petitioner first obtains in writing the express written consent of Peter Lorre.

The petitioner initiated the proceedings herein by filing his petition for change of name. He alleged that he was born in Karlsruhe, Germany, on April 1, 1934, and that his real name is Eugene Weingand. He petitions the court to make its order changing his name to Peter Lorie. He gives as the reasons for such change (1) his current last name is hard to pronounce; (2) he is engaged in show business and associates have called appellant by his proposed name for approximately one year, as well as associates and acquaintances in other walks of life.

Peter Lorre appeared at the hearing as a remonstrant to the granting of the petition for change of name. Following entry of judgment Mr. Lorre died on March 23, 1964. His surviving spouse, Annemarie Lorre, the regularly appointed administratrix of his estate, was duly substituted by order of court as objector in the within proceeding.

At the hearing on the petition for change of name petitioner and the remonstrant, Peter Lorre, testified and the latter called witnesses in support of his remonstrance. Evidence both oral and documentary was received.

Petitioner testified that in addition to the reasons set forth in his petition for change of his name from Eugene Weingand to Peter Lorie, he looks like Peter Lorre; his friends call him Peter Lorie; he has been using the name Peter Lorie and Peter Lorie, Jr. for about a year and a half to two years; he is engaged in the business of a real estate salesman and he passes out business cards showing his name as Eugene Weingand, also known as Peter Lorie, Jr. He is attending a school of acting, has acted in small theaters and is known there as Peter Lorie; he has been attending acting school to improve his diction. He did some acting while living in Germany and may have received some compensation there for his services as a young actor. He has been a resident of the United States for eight years; is now a naturalized citizen;

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

is presently engaged in the real estate business; and in reply to the question "Do you anticipate engaging in any other type of activity? . . . Do you have any inclination to be a movie actor or stage actor, or any type of actor whatsoever? A. Not at the moment, no."

Witnesses for the remonstrant included Jerome Blumenhein, the manager of an apartment house. He said petitioner called on him, introducing himself as Peter Lorie, Jr. He offered no card. The witness said "I have always been an avid fan of Peter Lorre. How is your father? I heard he wasn't well. . . . Does he have a liver ailment?" Petitioner replied "No, he has another ailment. . . . Alcohol."

Kathryn Larkin testified that she is an apartment house manager who was called upon by petitioner relative to the possible sale of the apartment house. The following conversation took place:

"Well, I am Peter Lorre."

I said, "Peter Lorre?"

He said, "Yes, Peter Lorre's son."

I said, "My goodness, I didn't even know he had a son."

He said, "Well, I've only been in the United States a few years."

He did not tell Mrs. Larkin his true name nor give her a business card.

Peter Lorre, the remonstrant, testified that he had been an actor for about 42 years and had acted in probably over 150 feature motion pictures. That in addition he had and was doing dramatic work including television shows.

Milton Moritz testified for the remonstrant as national director of advertising and publicity for American International Pictures. It was his opinion that if another actor appeared in the field of acting using the name Peter Lorie and acted under that name, it would cause confusion among the exhibitors of motion pictures and television pictures and would materially affect the earnings of Peter Lorre, the actor.

Lester Salkow, the business agent of the remonstrant, testified as to the high box office value of the name Peter Lorre as established by virtue of his being a star in the entertainment field over so many years. That the appearance in the competitive motion picture, television and entertainment field of another person using the name Peter Lorie or Peter Lorre, since they sound alike, would make it difficult for the public to differentiate and would materially affect the earning capacity of the objector.

The issues here presented are:

(1) Does petitioner have an absolute right to an order of the court changing his name or may the court exercise a discretion in denying his petition?

(2) Did that trial court abuse its discretion in denying the name change petition?

(3) Did the trial court erroneously include in its order an injunction against the use of the name "Peter Lorie" by petitioner?

The first enumerated issue is clearly answered by our Supreme Court in *In re Ross*, 8 Cal.2d 608 [67 P.2d 94, 110 A.L.R. 217]. There one Ross, an actor, had used the name of Ian Keith as a stage name for some 15 years; it had become valuable to him and he desired it to be legally made his name. There was no opposition but the trial court denied his petition upon determining that he had once been adjudicated a bankrupt and had not subsequently paid such debts. In reversing the judgment the court held that a lawful bankruptcy proceeding without subsequent payment of the discharged debts was not a substantial reason to justify the denial. The court then said: (p. 609) "The common law recognizes the right to change one's personal name without the necessity of legal proceedings, and the purpose of the statutory procedure is simply to have, wherever possible, a record of the change. [Citations.] Hence Mr. Ross may, regardless of the present petition, use the name of Keith if he desires. And in keeping with the object of the statute, a court to which he applies should normally make its decree recording such change of name. The statute provides in this connection: 'On the hearing, the court may examine on oath any of the petitioners, remonstrants, or other persons, touching the application, and may make an order changing the name, or dismissing the application, as to the court may seem right and proper.' (Code Civ. Proc., § 1278.) This provision permits the court in the exercise of its discretion to deny the application, but if such discretion is abused, it is of course subject to correction on appeal.''

In the *Matter of La Societe Francaise etc. Mutuelle*, 123 Cal. 525 [56 P. 458, 787], the court said: (p. 529) ''. . . The statute under consideration clearly vests in the superior court a discretion; but, as in all cases where the courts are permitted to exercise a discretion, it is not arbitrary, but guided and controlled by the principles of law and of justice.''

In *In re Useldinger*, 35 Cal.App.2d 723 [96 P.2d 958], petitioner had used the name James J. Britt for 14 years. He

married, registered the birth of his child, was known by and conducted tavern businesses under that name. For these reasons he filed his petition for change of name. One James Edward Britt, a former professional fighter, appeared as a remonstrant. He had at one time been in the plumbing business. Some people thought he was in the tavern business because of the use of the name Britt by petitioner. The trial court denied the petition upon this showing. In determining that the foregoing did not appear to be a substantial reason for denying the petition the appellate court said: (p. 727) "[W]e do not mean to imply that every petition for change of name must be granted or that the trial court may deny a petition only upon a showing of actual fraud or the actual invasion of the legal rights of another. Each case must stand upon its own particular facts in determining whether a trial court has abused its discretion in denying the petition. We are of the opinion, however, that as the petitioner here had constantly used and had been generally known by the adopted name over a long period of years, it did constitute an abuse of discretion to deny him a legal record of such change upon the unsubstantial showing made in opposition to his petition." (See also *In re McGehee*, 147 Cal.App.2d 25 [304 P.2d 167].)

In the light of the evidence herein and the substantial showing made in opposition to the petition no abuse of discretion was exercised by the trial court in denying the petitioner a legal record for change of name. The evidence fully supports the findings of the court to the effect that it is not true petitioner's last name is hard to pronounce; it is true that petitioner has been engaged in show business and his associates have called him by his proposed name for about one year; petitioner has no family connection with the name Lorre or with any other name sounding like Lorre or Lorie; that petitioner bears a physical resemblance of sorts to, and affects a manner of speech similar to that for which Peter Lorre is known; that for more than one year petitioner, in the course of his business transactions, has held himself out to the public to be Peter Lorre, Peter Lorie, Peter Lorie, Jr., and also as the son of Peter Lorre, the well-known actor. Petitioner, before moving to California, was active in theater groups in Germany and New York City. For about one year he has been attending an acting school in Hollywood, California. That Peter Lorre is a world-famous actor in motion pictures and television. His name is unique in the entertainment industry and has acquired a secondary meaning in that it

connotes the unique characterization, style, manner of speaking and appearance of Mr. Lorre. That the appearance in the entertainment industry of an actor bearing the name Peter Lorie would confuse the public in that advertising and publicity for a performance of Peter Lorie would draw members of the public expecting to see a performance of Peter Lorre. This would directly affect the commercial and professional value of the services and performances of Peter Lorre both present and future. That petitioner has not acted in good faith in filing his petition to change his name to Peter Lorie and his purpose in seeking an order of the court authorizing such name change is to ''cash in'' on the reputation of Peter Lorre. These findings, based upon credible evidence, constitute substantial reasons for the denial by the court of the petition herein for a change of name.

The final matter before us concerns the voluntary inclusion in the conclusions of law and the judgment of a permanent injunction restraining petitioner from ever using the name Peter Lorie for any purpose unless he first obtains in writing the express written consent of Peter Lorre. Sections 1275-1279 of the Code of Civil Procedure, pursuant to which the within proceedings were instituted, make no provision for any such injunctive restraints. The authority of the court therein prescribed is limited, upon a showing of good reason, to making an order changing the name or denying or dismissing the application. As pointed out in *In re Ross, supra,* 8 Cal.2d 608, 609, the common law recognizes the right of a person to change his name without the necessity of legal proceedings. The trial court therefore exceeded its jurisdiction in permanently enjoining petitioner from using the name Peter Lorie.

The judgment herein is modified by striking paragraph 2 thereof, being the paragraph containing the permanent injunction, and as so modified, is affirmed.

Herndon, Acting P. J., and Fleming, J., concurred.