**Bette MIDLER, Plaintiff–Appellant,**

v.

**FORD MOTOR COMPANY, a Delaware Corporation, and Young & Rubicam Inc., a New York Corporation, Defendants–Appellees.**

No. 87–6168.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 4, 1988.

Decided June 22, 1988.

Peter Laird, Los Angeles, Cal., for plaintiff-appellant.

Robert M. Callagy, New York City, for defendants-appellees.

Before HUG, TANG and NOONAN, Circuit Judges.

NOONAN, Circuit Judge:

This case centers on the protectibility of the voice of a celebrated chanteuse from commercial exploitation without her consent. Ford Motor Company and its advertising agency, Young & Rubicam, Inc., in 1985 advertised the Ford Lincoln Mercury with a series of nineteen 30 or 60 second television commercials in what the agency called "The Yuppie Campaign." The aim was to make an emotional connection with Yuppies, bringing back memories of when they were in college. Different popular songs of the seventies were sung on each commercial. The agency tried to get "the original people," that is, the singers who had popularized the songs, to sing them. Failing in that endeavor in ten cases the agency had the songs sung by "sound

alikes." Bette Midler, the plaintiff and appellant here, was done by a sound alike.

Midler is a nationally known actress and singer. She won a Grammy as early as 1973 as the Best New Artist of that year. Records made by her since then have gone Platinum and Gold. She was nominated in 1979 for an Academy award for Best Female Actress in *The Rose*, in which she portrayed a pop singer. *Newsweek* in its June 30, 1986 issue described her as an "outrageously original singer/comedian." *Time* hailed her in its March 2, 1987 issue as "a legend" and "the most dynamic and poignant singer-actress of her time."

When Young & Rubicam was preparing the Yuppie Campaign it presented the commercial to its client by playing an edited version of Midler singing "Do You Want To Dance," taken from the 1973 Midler album, "The Divine Miss M." After the client accepted the idea and form of the commercial, the agency contacted Midler's manager, Jerry Edelstein. The conversation went as follows: "Hello, I am Craig Hazen from Young and Rubicam. I am calling you to find out if Bette Midler would be interested in doing ...? Edelstein: "Is it a commercial?" "Yes." "We are not interested."

Undeterred, Young & Rubicam sought out Ula Hedwig whom it knew to have been one of "the Harlettes" a backup singer for Midler for ten years. Hedwig was told by Young & Rubicam that "they wanted someone who could sound like Bette Midler's recording of [Do You Want To Dance]." She was asked to make a "demo" tape of the song if she was interested. She made an a capella demo and got the job.

At the direction of Young & Rubicam, Hedwig then made a record for the commercial. The Midler record of "Do You Want To Dance" was first played to her. She was told to "sound as much as possible like the Bette Midler record," leaving out only a few "aahs" unsuitable for the commercial. Hedwig imitated Midler to the best of her ability.

After the commercial was aired Midler was told by "a number of people" that it

"sounded exactly" like her record of "Do You Want To Dance." Hedwig was told by "many personal friends" that they thought it was Midler singing the commercial. Ken Fritz, a personal manager in the entertainment business not associated with Midler, declares by affidavit that he heard the commercial on more than one occasion and thought Midler was doing the singing.

Neither the name nor the picture of Midler was used in the commercial; Young & Rubicam had a license from the copyright holder to use the song. At issue in this case is only the protection of Midler's voice. The district court described the defendants' conduct as that "of the average thief." They decided, "If we can't buy it, we'll take it." The court nonetheless believed there was no legal principle preventing imitation of Midler's voice and so gave summary judgment for the defendants. Midler appeals.

The First Amendment protects much of what the media do in the reproduction of likenesses or sounds. A primary value is freedom of speech and press. *Time, Inc. v. Hill*, 385 U.S. 374, 388, 87 S.Ct. 534, 542, 17 L.Ed.2d 456 (1967). The purpose of the media's use of a person's identity is central. If the purpose is "informative or cultural" the use is immune; "if it serves no such function but merely exploits the individual portrayed, immunity will not be granted." Felcher and Rubin, "Privacy, Publicity and the Portrayal of Real People by the Media," 88 Yale L.J. 1577, 1596 (1979). Moreover, federal copyright law preempts much of the area. "Mere imitation of a recorded performance would not constitute a copyright infringement even where one performer deliberately sets out to simulate another's performance as exactly as possible." Notes of Committee on the Judiciary, 17 U.S.C.A. § 114(b). It is in the context of these First Amendment and federal copyright distinctions that we address the present appeal.

Nancy Sinatra once sued Goodyear Tire and Rubber Company on the basis of an advertising campaign by Young & Rubicam featuring "These Boots Are Made For Walkin'," a song closely identified with her;

the female singers of the commercial were alleged to have imitated her voice and style and to have dressed and looked like her. The basis of Nancy Sinatra's complaint was unfair competition; she claimed that the song and the arrangement had acquired "a secondary meaning" which, under California law, was protectible. This court noted that the defendants "had paid a very substantial sum to the copyright proprietor to obtain the license for the use of the song and all of its arrangements." To give Sinatra damages for their use of the song would clash with federal copyright law. Summary judgment for the defendants was affirmed. *Sinatra v. Goodyear Tire & Rubber Co.*, 435 F.2d 711, 717–718 (9th Cir.1970), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 646 (1971). If Midler were claiming a secondary meaning to "Do You Want To Dance" or seeking to prevent the defendants from using that song, she would fail like Sinatra. But that is not this case. Midler does not seek damages for Ford's use of "Do You Want To Dance," and thus her claim is not preempted by federal copyright law. Copyright protects "original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). A voice is not copyrightable. The sounds are not "fixed." What is put forward as protectible here is more personal than any work of authorship.

Bert Lahr once sued Adell Chemical Co. for selling Lestoil by means of a commercial in which an imitation of Lahr's voice accompanied a cartoon of a duck. Lahr alleged that his style of vocal delivery was distinctive in pitch, accent, inflection, and sounds. The First Circuit held that Lahr had stated a cause of action for unfair competition, that it could be found "that defendant's conduct saturated plaintiff's audience, curtailing his market." *Lahr v. Adell Chemical Co.*, 300 F.2d 256, 259 (1st Cir.1962). That case is more like this one. But we do not find unfair competition here. One-minute commercials of the sort the defendants put on would not have saturated Midler's audience and curtailed her market. Midler did not do television commercials. The defendants were not in competi-

tion with her. *See Halicki v. United Artists Communications, Inc.*, 812 F.2d 1213 (9th Cir.1987).

California Civil Code section 3344 is also of no aid to Midler. The statute affords damages to a person injured by another who uses the person's "name, voice, signature, photograph or likeness, in any manner." The defendants did not use Midler's name or anything else whose use is prohibited by the statute. The voice they used was Hedwig's, not hers. The term "likeness" refers to a visual image not a vocal imitation. The statute, however, does not preclude Midler from pursuing any cause of action she may have at common law; the statute itself implies that such common law causes of action do exist because it says its remedies are merely "cumulative." *Id.* § 3344(g).

The companion statute protecting the use of a deceased person's name, voice, signature, photograph or likeness states that the rights it recognizes are "property rights." *Id.* § 990(b). By analogy the common law rights are also property rights. Appropriation of such common law rights is a tort in California. *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974). In that case what the defendants used in their television commercial for Winston cigarettes was a photograph of a famous professional racing driver's racing car. The number of the car was changed and a wing-like device known as a "spoiler" was attached to the car; the car's features of white pinpointing, an oval medallion, and solid red coloring were retained. The driver, Lothar Motschenbacher, was in the car but his features were not visible. Some persons, viewing the commercial, correctly inferred that the car was his and that he was in the car and was therefore endorsing the product. The defendants were held to have invaded a "proprietary interest" of Motschenbacher in his own identity. *Id.* at 825.

Midler's case is different from Motschenbacher's. He and his car were physically used by the tobacco company's ad; he made part of his living out of giving commercial endorsements. But, as Judge Koelsch expressed it in *Motschenbacher*, California will recognize an injury from "an appropriation of the attributes of one's identity." *Id.* at 824. It was irrelevant that Motschenbacher could not be identified in the ad. The ad suggested that it was he. The ad did so by emphasizing signs or symbols associated with him. In the same way the defendants here used an imitation to convey the impression that Midler was singing for them.

Why did the defendants ask Midler to sing if her voice was not of value to them? Why did they studiously acquire the services of a sound-alike and instruct her to imitate Midler if Midler's voice was not of value to them? What they sought was an attribute of Midler's identity. Its value was what the market would have paid for Midler to have sung the commercial in person.

A voice is more distinctive and more personal than the automobile accouterments protected in *Motschenbacher*. A voice is as distinctive and personal as a face. The human voice is one of the most palpable ways identity is manifested. We are all aware that a friend is at once known by a few words on the phone. At a philosophical level it has been observed that with the sound of a voice, "the other stands before me." D. Ihde, *Listening and Voice* 77 (1976). A fortiori, these observations hold true of singing, especially singing by a singer of renown. The singer manifests herself in the song. To impersonate her voice is to pirate her identity. *See* W. Keeton, D. Dobbs, R. Keeton, D. Owen, *Prosser & Keeton on Torts* 852 (5th ed. 1984).

We need not and do not go so far as to hold that every imitation of a voice to advertise merchandise is actionable. We hold only that when a distinctive voice of a professional singer is widely known and is deliberately imitated in order to sell a product, the sellers have appropriated what is not theirs and have committed a tort in California. Midler has made a showing, sufficient to defeat summary judgment, that the defendants here for their own

profit in selling their product did appropriate part of her identity.

REVERSED AND REMANDED FOR TRIAL.