Vanna WHITE, Plaintiff–Appellant,

v.

SAMSUNG ELECTRONICS AMERICA, INC., a New York corporation, and David Deutsch Associates, Inc., a New York corporation, Defendants–Appellees.

No. 90–55840.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 7, 1991.

Decided July 29, 1992.

**1396**

Blaine Greenberg, John Genga, Hill Wynne Troop & Meisinger, Los Angeles, Cal., for plaintiff-appellant.

Anthony Liebig, Kenneth Kulzick, Liebig & Kulzick, Los Angeles, Cal., for defendants-appellees.

Before: GOODWIN, PREGERSON, and ALARCON, Circuit Judges.

GOODWIN, Senior Circuit Judge:

This case involves a promotional "fame and fortune" dispute. In running a particular advertisement without Vanna White's permission, defendants Samsung Electronics America, Inc. (Samsung) and David Deutsch Associates, Inc. (Deutsch) attempted to capitalize on White's fame to enhance their fortune. White sued, alleging infringement of various intellectual property rights, but the district court granted summary judgment in favor of the defendants. We affirm in part, reverse in part, and remand.

Plaintiff Vanna White is the hostess of "Wheel of Fortune," one of the most popular game shows in television history. An estimated forty million people watch the program daily. Capitalizing on the fame which her participation in the show has bestowed on her, White markets her identity to various advertisers.

The dispute in this case arose out of a series of advertisements prepared for Samsung by Deutsch. The series ran in at least half a dozen publications with widespread, and in some cases national, circulation. Each of the advertisements in the series followed the same theme. Each depicted a current item from popular culture and a Samsung electronic product. Each was set in the twenty-first century and conveyed the message that the Samsung product would still be in use by that time. By hypothesizing outrageous future outcomes for the cultural items, the ads created humorous effects. For example, one lampooned current popular notions of an unhealthy diet by depicting a raw steak with the caption: "Revealed to be health food. 2010 A.D." Another depicted irreverent "news"-show host Morton Downey Jr. in front of an American flag with the caption: "Presidential candidate. 2008 A.D."

The advertisement which prompted the current dispute was for Samsung videocassette recorders (VCRs). The ad depicted a robot, dressed in a wig, gown, and jewelry which Deutsch consciously selected to resemble White's hair and dress. The robot was posed next to a game board which is instantly recognizable as the Wheel of Fortune game show set, in a stance for which White is famous. The caption of the ad read: "Longest-running game show. 2012 A.D." Defendants referred to the ad as the "Vanna White" ad. Unlike the other celebrities used in the campaign, White neither consented to the ads nor was she paid.

Following the circulation of the robot ad, White sued Samsung and Deutsch in federal district court under: (1) California Civil Code § 3344; (2) the California common law right of publicity; and (3) § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The district court granted summary judgment

against White on each of her claims. White now appeals.

## I. *Section 3344*

■ White first argues that the district court erred in rejecting her claim under section 3344. Section 3344(a) provides, in pertinent part, that "[a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, ... for purposes of advertising or selling, ... without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof."

White argues that the Samsung advertisement used her "likeness" in contravention of section 3344. In *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir.1988), this court rejected Bette Midler's section 3344 claim concerning a Ford television commercial in which a Midler "sound-alike" sang a song which Midler had made famous. In rejecting Midler's claim, this court noted that "[t]he defendants did not use Midler's name or anything else whose use is prohibited by the statute. The voice they used was [another person's], not hers. The term 'likeness' refers to a visual image not a vocal imitation." *Id.* at 463.

In this case, Samsung and Deutsch used a robot with mechanical features, and not, for example, a manikin molded to White's precise features. Without deciding for all purposes when a caricature or impressionistic resemblance might become a "likeness," we agree with the district court that the robot at issue here was not White's "likeness" within the meaning of section 3344. Accordingly, we affirm the court's dismissal of White's section 3344 claim.

## II. *Right of Publicity*

■ White next argues that the district court erred in granting summary judgment to defendants on White's common law right of publicity claim. In *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 198 Cal. Rptr. 342 (1983), the California court of appeal stated that the common law right of publicity cause of action "may be pleaded by alleging (1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Id.* at 417, 198 Cal.Rptr. 342 (citing Prosser, Law of Torts (4th ed. 1971) § 117, pp. 804–807). The district court dismissed White's claim for failure to satisfy *Eastwood's* second prong, reasoning that defendants had not appropriated White's "name or likeness" with their robot ad. We agree that the robot ad did not make use of White's name or likeness. However, the common law right of publicity is not so confined.

The *Eastwood* court did not hold that the right of publicity cause of action could be pleaded only by alleging an appropriation of name or likeness. *Eastwood* involved an unauthorized use of photographs of Clint Eastwood and of his name. Accordingly, the *Eastwood* court had no occasion to consider the extent beyond the use of name or likeness to which the right of publicity reaches. That court held only that the right of publicity cause of action "may be" pleaded by alleging, *inter alia,* appropriation of name or likeness, not that the action may be pleaded *only* in those terms.

The "name or likeness" formulation referred to in *Eastwood* originated not as an element of the right of publicity cause of action, but as a description of the types of cases in which the cause of action had been recognized. The source of this formulation is Prosser, *Privacy*, 48 Cal.L.Rev. 383, 401–07 (1960), one of the earliest and most enduring articulations of the common law right of publicity cause of action. In looking at the case law to that point, Prosser recognized that right of publicity cases involved one of two basic factual scenarios: name appropriation, and picture or other likeness appropriation. *Id.* at 401–02, nn. 156–57.

Even though Prosser focused on appropriations of name or likeness in discussing the right of publicity, he noted that "[i]t is not impossible that there might be appropriation of the plaintiff's identity, as by impersonation, without the use of either his name or his likeness, and that this would

be an invasion of his right of privacy." *Id.* at 401, n. 155.[1] At the time Prosser wrote, he noted however, that "[n]o such case appears to have arisen." *Id.*

Since Prosser's early formulation, the case law has borne out his insight that the right of publicity is not limited to the appropriation of name or likeness. In *Motschenbacher v. R.J. Reynolds Tobacco Co.,* 498 F.2d 821 (9th Cir.1974), the defendant had used a photograph of the plaintiff's race car in a television commercial. Although the plaintiff appeared driving the car in the photograph, his features were not visible. Even though the defendant had not appropriated the plaintiff's name or likeness, this court held that plaintiff's California right of publicity claim should reach the jury.

In *Midler,* this court held that, even though the defendants had not used Midler's name or likeness, Midler had stated a claim for violation of her California common law right of publicity because "the defendants ... for their own profit in selling their product did appropriate part of her identity" by using a Midler sound-alike. *Id.* at 463–64.

In *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir.1983), the defendant had marketed portable toilets under the brand name "Here's Johnny"—Johnny Carson's signature "Tonight Show" introduction—without Carson's permission. The district court had dismissed Carson's Michigan common law right of publicity claim because the defendants had not used Carson's "name or likeness." *Id.* at 835. In reversing the district court, the sixth circuit found "the district court's conception of the right of publicity ... too narrow" and held that the right was implicated because the defendant had appropriated Carson's identity by using, *inter alia,* the phrase "Here's Johnny." *Id.* at 835–37.

■ These cases teach not only that the common law right of publicity reaches means of appropriation other than name or likeness, but that the specific means of

appropriation are relevant only for determining whether the defendant has in fact appropriated the plaintiff's identity. The right of publicity does not require that appropriations of identity be accomplished through particular means to be actionable. It is noteworthy that the *Midler* and *Carson* defendants not only avoided using the plaintiff's name or likeness, but they also avoided appropriating the celebrity's voice, signature, and photograph. The photograph in *Motschenbacher* did include the plaintiff, but because the plaintiff was not visible the driver could have been an actor or dummy and the analysis in the case would have been the same.

Although the defendants in these cases avoided the most obvious means of appropriating the plaintiffs' identities, each of their actions directly implicated the commercial interests which the right of publicity is designed to protect. As the *Carson* court explained:

> [t]he right of publicity has developed to protect the commercial interest of celebrities in their identities. The theory of the right is that a celebrity's identity can be valuable in the promotion of products, and the celebrity has an interest that may be protected from the unauthorized commercial exploitation of that identity.... If the celebrity's identity is commercially exploited, there has been an invasion of his right whether or not his "name or likeness" is used.

*Carson,* 698 F.2d at 835. It is not important *how* the defendant has appropriated the plaintiff's identity, but *whether* the defendant has done so. *Motschenbacher, Midler,* and *Carson* teach the impossibility of treating the right of publicity as guarding only against a laundry list of specific means of appropriating identity. A rule which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely challenges the clever advertising strategist to come up with the tenth.

---

1. Under Professor Prosser's scheme, the right of publicity is the last of the four categories of the right to privacy. Prosser, 48 Cal.L.Rev. at *389.*

Indeed, if we treated the means of appropriation as dispositive in our analysis of the right of publicity, we would not only weaken the right but effectively eviscerate it. The right would fail to protect those plaintiffs most in need of its protection. Advertisers use celebrities to promote their products. The more popular the celebrity, the greater the number of people who recognize her, and the greater the visibility for the product. The identities of the most popular celebrities are not only the most attractive for advertisers, but also the easiest to evoke without resorting to obvious means such as name, likeness, or voice.

Consider a hypothetical advertisement which depicts a mechanical robot with male features, an African–American complexion, and a bald head. The robot is wearing black hightop Air Jordan basketball sneakers, and a red basketball uniform with black trim, baggy shorts, and the number 23 (though not revealing "Bulls" or "Jordan" lettering). The ad depicts the robot dunking a basketball one-handed, stiff-armed, legs extended like open scissors, and tongue hanging out. Now envision that this ad is run on television during professional basketball games. Considered individually, the robot's physical attributes, its dress, and its stance tell us little. Taken together, they lead to the only conclusion that any sports viewer who has registered a discernible pulse in the past five years would reach: the ad is about Michael Jordan.

Viewed separately, the individual aspects of the advertisement in the present case say little. Viewed together, they leave little doubt about the celebrity the ad is meant to depict. The female-shaped robot is wearing a long gown, blond wig, and large jewelry. Vanna White dresses exactly like this at times, but so do many other women. The robot is in the process of turning a block letter on a game-board. Vanna White dresses like this while turning letters on a game-board but perhaps similarly attired Scrabble-playing women do this as well. The robot is standing on what looks to be the Wheel of Fortune game show set. Vanna White dresses like this, turns letters, and does this on the Wheel of Fortune game show. She is the only one. Indeed, defendants themselves referred to their ad as the "Vanna White" ad. We are not surprised.

Television and other media create marketable celebrity identity value. Considerable energy and ingenuity are expended by those who have achieved celebrity value to exploit it for profit. The law protects the celebrity's sole right to exploit this value whether the celebrity has achieved her fame out of rare ability, dumb luck, or a combination thereof. We decline Samsung and Deutch's invitation to permit the evisceration of the common law right of publicity through means as facile as those in this case. Because White has alleged facts showing that Samsung and Deutsch had appropriated her identity, the district court erred by rejecting, on summary judgment, White's common law right of publicity claim.

### III. *The Lanham Act*

■ White's final argument is that the district court erred in denying her claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). The version of section 43(a) applicable to this case [2] provides, in pertinent part, that "[a]ny person who shall ... use, in connection with any goods or services ... any false description or representation ... shall be liable to a civil action ... by any person who believes that he is or is likely to be damaged by the use of any such false description or designation." 15 U.S.C. § 1125(a).

To prevail on her Lanham Act claim, White is required to show that in running the robot ad, Samsung and Deutsch created a likelihood of confusion, *Academy of Motion Picture Arts v. Creative House*, 944 F.2d 1446, 1454 (9th Cir.1991); *Toho Co. Ltd. v. Sears Roebuck & Co.*, 645 F.2d 788, 790 (9th Cir.1981) *New West Corp. v. NYM*

---

**2.** The statute was amended after White filed her complaint. The amendments would not have altered the analysis in this case however.

*Co. of California,* 595 F.2d 1194, 1201 (9th Cir.1979), over whether White was endorsing Samsung's VCRs. *HMH Publishing Co. v. Brincat,* 504 F.2d 713 (9th Cir.1974); *Allen v. National Video, Inc.,* 610 F.Supp. 612 (D.C.N.Y.1985).

 This circuit recognizes several different multi-factor tests for determining whether a likelihood of confusion exists. *See Academy,* 944 F.2d at 1454, n. 3. None of these tests is correct to the exclusion of the others. *Eclipse Associates Ltd. v. Data General Corp.,* 894 F.2d 1114, 1118 (9th Cir.1990). Normally, in reviewing the district court's decision, this court will look to the particular test that the district court used. *Academy,* 944 F.2d at 1454, n. 3; *Eclipse,* 894 F.2d at 1117–1118. However, because the district court in this case apparently did not use any of the multi-factor tests in making its likelihood of confusion determination, and because this case involves an appeal from summary judgment and we review de novo the district court's determination, we will look for guidance to the 8–factor test enunciated in *AMF, Inc. v. Sleekcraft Boats,* 599 F.2d 341 (9th Cir. 1979). According to *AMF,* factors relevant to a likelihood of confusion include:

(1) strength of the plaintiff's mark;

(2) relatedness of the goods;

(3) similarity of the marks;

(4) evidence of actual confusion;

(5) marketing channels used;

(6) likely degree of purchaser care;

(7) defendant's intent in selecting the mark;

(8) likelihood of expansion of the product lines.

599 F.2d at 348–49. We turn now to consider White's claim in light of each factor.

 In cases involving confusion over endorsement by a celebrity plaintiff, "mark" means the celebrity's persona. *See Allen,* 610 F.Supp. at 627. The "strength" of the mark refers to the level of recognition the celebrity enjoys among members of society. *See Academy,* 944 F.2d at 1455. If Vanna White is unknown to the segment of the public at whom Samsung's robot ad was directed, then that segment could not be confused as to whether she was endorsing Samsung VCRs. Conversely, if White is well-known, this would allow the possibility of a likelihood of confusion. For the purposes of the *Sleekcraft* test, White's "mark," or celebrity identity, is strong.

In cases concerning confusion over celebrity endorsement, the plaintiff's "goods" concern the reasons for or source of the plaintiff's fame. Because White's fame is based on her televised performances, her "goods" are closely related to Samsung's VCRs. Indeed, the ad itself reinforced the relationship by informing its readers that they would be taping the "longest-running game show" on Samsung's VCRs well into the future.

The third factor, "similarity of the marks," both supports and contradicts a finding of likelihood of confusion. On the one hand, all of the aspects of the robot ad identify White; on the other, the figure is quite clearly a robot, not a human. This ambiguity means that we must look to the other factors for resolution.

The fourth factor does not favor White's claim because she has presented no evidence of actual confusion.

Fifth, however, White has appeared in the same stance as the robot from the ad in numerous magazines, including the covers of some. Magazines were used as the marketing channels for the robot ad. This factor cuts toward a likelihood of confusion.

Sixth, consumers are not likely to be particularly careful in determining who endorses VCRs, making confusion as to their endorsement more likely.

Concerning the seventh factor, "defendant's intent," the district court found that, in running the robot ad, the defendants had intended a spoof of the "Wheel of Fortune." The relevant question is whether the defendants "intended to profit by confusing consumers" concerning the endorsement of Samsung VCRs. *Toho,* 645 F.2d 788. We do not disagree that defendants intended to spoof Vanna White and "Wheel of Fortune." That does not preclude, however, the possibility that defendants also

intended to confuse consumers regarding endorsement. The robot ad was one of a series of ads run by defendants which followed the same theme. Another ad in the series depicted Morton Downey Jr. as a presidential candidate in the year 2008. Doubtless, defendants intended to spoof presidential elections and Mr. Downey through this ad. Consumers, however, would likely believe, and would be correct in so believing, that Mr. Downey was paid for his permission and was endorsing Samsung products. Looking at the series of advertisements as a whole, a jury could reasonably conclude that beneath the surface humor of the series lay an intent to persuade consumers that celebrity Vanna White, like celebrity Downey, was endorsing Samsung products.

Finally, the eighth factor, "likelihood of expansion of the product lines," does not appear apposite to a celebrity endorsement case such as this.

Application of the *Sleekcraft* factors to this case indicates that the district court erred in rejecting White's Lanham Act claim at the summary judgment stage. In so concluding, we emphasize two facts, however. First, construing the motion papers in White's favor, as we must, we hold only that White has raised a genuine issue of material fact concerning a likelihood of confusion as to her endorsement. *Cohen v. Paramount Pictures Corp.*, 845 F.2d 851, 852–53 (9th Cir.1988). Whether White's Lanham Act claim should succeed is a matter for the jury. Second, we stress that we reach this conclusion in light of the peculiar facts of this case. In particular, we note that the robot ad identifies White and was part of a series of ads in which other celebrities participated and were paid for their endorsement of Samsung's products.

## IV. *The Parody Defense*

■ In defense, defendants cite a number of cases for the proposition that their robot ad constituted protected speech. The only cases they cite which are even remotely relevant to this case are *Hustler Magazine v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988) and *L.L. Bean, Inc. v. Drake Publishers, Inc.*, 811 F.2d 26 (1st Cir.1987). Those cases involved parodies of advertisements run for the purpose of poking fun at Jerry Falwell and L.L. Bean, respectively. This case involves a true advertisement run for the purpose of selling Samsung VCRs. The ad's spoof of Vanna White and Wheel of Fortune is subservient and only tangentially related to the ad's primary message: "buy Samsung VCRs." Defendants' parody arguments are better addressed to non-commercial parodies.[3] The difference between a "parody" and a "knock-off" is the difference between fun and profit.

---

3. In warning of a first amendment chill to expressive conduct, the dissent reads this decision too broadly. *See Dissent* at 1407. This case concerns only the market which exists in our society for the exploitation of celebrity to sell products, and an attempt to take a free ride on a celebrity's celebrity value. Commercial advertising which relies on celebrity fame is different from other forms of expressive activity in two crucial ways.

First, for celebrity exploitation advertising to be effective, the advertisement must evoke the celebrity's identity. The more effective the evocation, the better the advertisement. If, as Samsung claims, its ad was based on a "generic" game-show hostess and not on Vanna White, the ad would not have violated anyone's right of publicity, but it would also not have been as humorous or as effective.

Second, even if some forms of expressive activity, such as parody, do rely on identity evocation, the first amendment hurdle will bar most right of publicity actions against those activities. *Cf. Falwell*, 485 U.S. at 46, 108 S.Ct. at 876. In the case of commercial advertising, however, the first amendment hurdle is not so high. *Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York*, 447 U.S. 557, 566, 100 S.Ct. 2343, 2351, 65 L.Ed.2d 341 (1980). Realizing this, Samsung attempts to elevate its ad above the status of garden-variety commercial speech by pointing to the ad's parody of Vanna White. Samsung's argument is unavailing. *See Board of Trustees, State Univ. of N.Y. v. Fox*, 492 U.S. 469, 474–75, 109 S.Ct. 3028, 3031, 106 L.Ed.2d 388 (1988); *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 67–68, 103 S.Ct. 2875, 2880–81, 77 L.Ed.2d 469 (1983). Unless the first amendment bars all right of publicity actions—and it does not, *see Zachini v. Scripps–Howard Broadcasting Co.*, 433 U.S. 562, 97 S.Ct. 2849, 53 L.Ed.2d 965 (1977)—then it does not bar this case.

## V. *Conclusion*

In remanding this case, we hold only that White has pleaded claims which can go to the jury for its decision.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED.

ALARCON, Circuit Judge, concurring in part, dissenting in part:

Vanna White seeks recovery from Samsung based on three theories: the right to privacy, the right to publicity, and the Lanham Act. I concur in the majority's conclusions on the right to privacy. I respectfully dissent from its holdings on the right to publicity and the Lanham Act claims.

### I.

### RIGHT TO PRIVACY (CAL.CIV.CODE § 3344(a))

I agree with the majority's conclusion that no reasonable jury could find that the robot was a "likeness" of Vanna White within the meaning of California Civil Code section 3344(a).

### II.

### RIGHT TO PUBLICITY

I must dissent from the majority's holding on Vanna White's right to publicity claim. The district court found that, since the commercial advertisement did not show a "likeness" of Vanna White, Samsung did not improperly use the plaintiff's identity. The majority asserts that the use of a likeness is not required under California common law. According to the majority, recovery is authorized if there is an appropriation of one's "identity." I cannot find any holding of a California court that supports this conclusion. Furthermore, the record does not support the majority's finding that Vanna White's "identity" was appropriated.

The district court relied on *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 198 Cal.Rptr. 342, (1983), in holding that there was no cause of action for infringement on the right to publicity because there had been no use of a likeness. In *Eastwood*, the California Court of Appeal described the elements of the tort of "commercial appropriation of the right of publicity" as "(1) the defendant's use of the plaintiff's identity; (2) *the appropriation of plaintiff's name or likeness* to defendant's advantage, ...; (3) lack of consent; and (4) resulting injury." *Id.* at 417, 198 Cal.Rptr. 342. (Emphasis added).

All of the California cases that my research has disclosed hold that a cause of action for appropriation of the right to publicity requires proof of the appropriation of a name or likeness. *See, e.g., Lugosi v. Universal Pictures,* 25 Cal.3d 813, 603 P.2d 425, 160 Cal.Rptr. 323 (1979) ("The so-called right of publicity means in essence that the reaction of the public to name and likeness ... endows the name and likeness of the person involved with commercially exploitable opportunities."); *Guglielmi v. Spelling–Goldberg Prods.,* 25 Cal.3d 860, 603 P.2d 454, 457, 160 Cal.Rptr. 352, 355 (1979) (use of name of Rudolph Valentino in fictional biography allowed); *Eastwood v. Superior Court, supra* (use of photo and name of actor on cover of tabloid newspaper); *In re Weingand,* 231 Cal.App.2d 289, 41 Cal.Rptr. 778 (1964) (aspiring actor denied court approval to change name to "Peter Lorie" when famous actor Peter Lorre objected); *Fairfield v. American Photocopy Equip. Co.,* 138 Cal.App.2d 82, 291 P.2d 194 (1955), *later app.* 158 Cal. App.2d 53, 322 P.2d 93 (1958) (use of attorney's name in advertisement); *Gill v. Curtis Publishing Co.,* 38 C.2d 273, 239 P.2d 630 (1952) (use of photograph of a couple in a magazine).

Notwithstanding the fact that California case law clearly limits the test of the right to publicity to name and likeness, the majority concludes that "the common law right of publicity is not so confined." Majority opinion at p. 1397. The majority relies on two factors to support its innovative extension of the California law. The first is that the *Eastwood* court's statement of the elements was permissive rather than exclusive. The second is that Dean Prosser, in describing the common law right to publicity, stated that it might be

possible that the right extended beyond name or likeness. These are slender reeds to support a federal court's attempt to create new law for the state of California.

In reaching its surprising conclusion, the majority has ignored the fact that the California Court of Appeal in *Eastwood* specifically addressed the differences between the common law right to publicity and the statutory cause of action codified in California Civil Code section 3344. The court explained that "[t]he differences between the common law and the statutory actions are: (1) Section 3344, subdivision (a) requires *knowing* use whereas under case law, mistake and inadvertence are not a defense against commercial appropriation and (2) section 3344, subdivision (g) expressly provides that its remedies are cumulative and in addition to any provided by law." *Eastwood*, 149 Cal.App.3d at n. 6, 198 Cal.Rptr. 342 (emphasis in original). The court did not include appropriations of identity by means other than name or likeness among its list of differences between the statute and the common law.

The majority also relies on Dean Prosser's statement that "[i]t is not impossible that there might be an appropriation of the plaintiff's identity, as by impersonation, without the use of either his name or his likeness, and that this would be an invasion of his right of privacy." Prosser, *Privacy*, 48 Cal.L.Rev. 383, 401 n. 155 (1960). As Dean Prosser noted, however, "[n]o such case appears to have arisen." *Id.*

The majority states that the case law has borne out Dean Prosser's insight that the right to publicity is not limited to name or likeness. As noted above, however, the courts of California have never found an infringement on the right to publicity without the use of the plaintiff's name or likeness.

The interest of the California Legislature as expressed in California Civil Code section 3344 appears to preclude the result reached by the majority. The original section 3344 protected only name or likeness. In 1984, ten years after our decision in *Motschenbacher v. R.J. Reynolds Tobacco Company*, 498 F.2d 821 (9th Cir.1974) and 24 years after Prosser speculated about the future development of the law of the right of publicity, the California legislature amended the statute. California law now makes the use of someone's voice or signature, as well as name or likeness, actionable. Cal.Civ.Code sec. 2233(a) (Deering 1991 Supp.). Thus, California, after our decision in *Motschenbacher* specifically contemplated protection for interests other than name or likeness, but did not include a cause of action for appropriation of another person's identity. The ancient maxim, *inclusio unius est exclusio alterius*, would appear to bar the majority's innovative extension of the right of publicity. The clear implication from the fact that the California Legislature chose to add only voice and signature to the previously protected interests is that it wished to limit the cause of action to enumerated attributes.

The majority has focused on federal decisions in its novel extension of California Common Law. Those decisions do not provide support for the majority's decision.

In each of the federal cases relied upon by the majority, the advertisement affirmatively represented that the person depicted therein was the plaintiff. In this case, it is clear that a metal robot and not the plaintiff, Vanna White, is depicted in the commercial advertisement. The record does not show an appropriation of Vanna White's identity.

In *Motschenbacher*, a picture of a well-known race driver's car, including its unique markings, was used in an advertisement. *Id.* at 822. Although the driver could be seen in the car, his features were not visible. *Id.* The distinctive markings on the car were the only information shown in the ad regarding the identity of the driver. These distinctive markings compelled the inference that Motschenbacher was the person sitting in the racing car. We concluded that "California appellate courts would ... afford legal protection to an individual's proprietary interest in his own identity." *Id.* at 825. (Emphasis added). Because the distinctive markings on the racing car were sufficient to identify Motschenbacher as the driver of the car,

we held that an issue of fact had been raised as to whether his identity had been appropriated. *Id.* at 827.

In *Midler v. Ford Motor Co.,* 849 F.2d 460 (9th Cir.1988), a singer who had been instructed to sound as much like Bette Midler as possible, sang a song in a radio commercial made famous by Bette Midler. *Id.* at 461. A number of persons told Bette Midler that they thought that she had made the commercial. *Id.* at 462. Aside from the voice, there was no information in the commercial from which the singer could be identified. We noted that "[t]he human voice is one of the most palpable ways identity is manifested." *Id.* at 463. We held that, "[t]o impersonate her voice is to pirate her identity," *id.,* and concluded that Midler had raised a question of fact as to the misappropriation of her identity.

In *Carson v. Here's Johnny Portable Toilets, Inc.,* 698 F.2d 831 (6th Cir.1983), the Sixth Circuit was called upon to interpret Michigan's common-law right to publicity. The case involved a manufacturer who used the words, "Here's Johnny," on portable toilets. *Id.* at 832–33. These same words were used to introduce the star of a popular late-night television program. There was nothing to indicate that this use of the phrase on the portable toilets was not associated with Johnny Carson's television program. The court found that "[h]ere there was an appropriation of Carson's identity," which violated the right to publicity. *Id.* at 837.

The common theme in these federal cases is that identifying characteristics unique to the plaintiffs were used in a context in which they were the only information as to the identity of the individual. The commercial advertisements in each case showed attributes of the plaintiff's identities which made it appear that the plaintiff was the person identified in the commercial. No effort was made to dispel the impression that the plaintiffs were the source of the personal attributes at issue. The commercials affirmatively represented that the plaintiffs were involved. *See, e.g., Midler* at 462 ("The [Motschenbacher] ad suggested that it was he.... In the same way the

defendants here used an imitation to convey the impression that Midler was singing for them."). The proper interpretation of *Motschenbacher, Midler,* and *Carson* is that where identifying characteristics unique to a plaintiff are the only information as to the identity of the person appearing in an ad, a triable issue of fact has been raised as to whether his or her identity as been appropriated.

The case before this court is distinguishable from the factual showing made in *Motschenbacher, Midler,* and *Carson.* It is patently clear to anyone viewing the commercial advertisement that Vanna White was not being depicted. No reasonable juror could confuse a metal robot with Vanna White.

The majority contends that "the individual aspects of the advertisement ... [v]iewed together leave little doubt about the celebrity the ad is meant to depict." Majority Opinion at p. 1399. It derives this conclusion from the fact that Vanna White is "the only one" who "dresses like this, turns letters, and does this on the Wheel of Fortune game show." *Id.* In reaching this conclusion, the majority confuses Vanna White, the person, with the role she has assumed as the current hostess on the "Wheel of Fortune" television game show. A recognition of the distinction between a performer and the part he or she plays is essential for a proper analysis of the facts of this case. As is discussed below, those things which Vanna White claims identify her are not unique to her. They are, instead, attributes of the *role* she plays. The representation of those attributes, therefore, does not constitute a representation of Vanna White. *See Nurmi v. Peterson,* 10 U.S.P.Q.2d 1775 (C.D.Cal.1989) (distinguishing between performer and role).

Vanna White is a one-role celebrity. She is famous solely for appearing as the hostess on the "Wheel of Fortune" television show. There is nothing unique about Vanna White or the attributes which she claims identify her. Although she appears to be an attractive woman, her face and figure are no more distinctive than that of other equally comely women. She performs her

role as hostess on "Wheel of Fortune" in a simple and straight-forward manner. Her work does not require her to display whatever artistic talent she may possess.

The majority appears to argue that because Samsung created a robot with the physical proportions of an attractive woman, posed it gracefully, dressed it in a blond wig, an evening gown, and jewelry, and placed it on a set that resembles the Wheel of Fortune layout, it thereby appropriated Vanna White's identity. But an attractive appearance, a graceful pose, blond hair, an evening gown, and jewelry are attributes shared by many women, especially in Southern California. These common attributes are particularly evident among game-show hostesses, models, actresses, singers, and other women in the entertainment field. They are not unique attributes of Vanna White's identity. Accordingly, I cannot join in the majority's conclusion that, even if viewed together, these attributes identify Vanna White and, therefore, raise a triable issue as to the appropriation of her identity.

The only characteristic in the commercial advertisement that is not common to many female performers or celebrities is the imitation of the "Wheel of Fortune" set. This set is the only thing which might possibly lead a viewer to think of Vanna White. The Wheel of Fortune set, however, is not an attribute of Vanna White's identity. It is an identifying characteristic of a television game show, a prop with which Vanna White interacts in her role as the current hostess. To say that Vanna White may bring an action when another blond female performer or robot appears on such a set as a hostess will, I am sure, be a surprise to the owners of the show. *Cf. Baltimore Orioles, Inc. v. Major League Baseball Players Ass'n,* 805 F.2d 663 (7th Cir.1986) (right to publicity in videotaped performances preempted by copyright of owner of telecast).

The record shows that Samsung recognized the market value of Vanna White's identity. No doubt the advertisement would have been more effective if Vanna White had appeared in it. But the fact that

Samsung recognized Vanna White's value as a celebrity does not necessarily mean that it appropriated her identity. The record shows that Samsung dressed a robot in a costume usually worn by television game-show hostesses, including Vanna White. A blond wig, and glamorous clothing are not characteristics unique to the current hostess of Wheel of Fortune. This evidence does not support the majority's determination that the advertisement was meant to depict Vanna White. The advertisement was intended to depict a robot, playing the role Vanna White currently plays on the Wheel of Fortune. I quite agree that anyone seeing the commercial advertisement would be reminded of Vanna White. *Any* performance by another female celebrity as a game-show hostess, however, will also remind the viewer of Vanna White because Vanna White's celebrity is so closely associated with the role. But the fact that an actor or actress became famous for playing a particular role has, until now, never been sufficient to give the performer a proprietary interest in it. I cannot agree with the majority that the California courts, which have consistently taken a narrow view of the right to publicity, would extend law to these unique facts.

### III.

### THE LANHAM ACT

Vanna White's Lanham Act claim is easily resolved by applying the proper legal standard. Vanna White seeks damages for violation of section 43(a) of the Lanham Act. To succeed, Vanna White must prove actual deception of the consuming public. *Harper House, Inc. v. Thomas Nelson, Inc.,* 889 F.2d 197, 208 (9th Cir.1989) (claim for damages under section 43(a) requires showing the defendant "actually deceived a significant portion of the consuming public."); *see also PPX Enterprises, Inc. v. Audiofidelity Enterprises, Inc.,* 818 F.2d 266, 271 (2d Cir.1987) ("to establish entitlement to damages for violation of section 43(a): [Plaintiffs] must establish actual confusion or deception resulting from the violation."); J. Gilson, Trademark Protec-

tion and Practice section 7.02[8] at 7–137 to 7–138 (1991) (plaintiffs must show actual deception to obtain damages under section 43(a)). Vanna White offered no evidence that any portion of the consuming public was deceived. The district court was correct in granting summary judgment on Vanna White's Lanham Act claim.

The majority finds that because a majority of factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979), favor Vanna White, the district court erred in granting summary judgment.

The *AMF* test is designed to aid in determining whether two marks are so sufficiently similar that it is likely that a consumer would confuse them. Where the marks are so obviously different that no confusion could possibly occur, the test is unnecessary. That is the situation in this matter. The attempt to use the Lanham Act to prevent "misappropriations" of which a court does not approve results in the distortion of the law which makes it more difficult to apply the law in appropriate cases. *See* Hanson & Walls, Protecting Trademark Goodwill: Towards a Federal Standard of Misappropriation, 81 Trademark Rep. 480, 511–513 (1991). This case is an example of such distortion.

The majority assumes the conclusion that the *AMF* test is designed to disclose. In repeatedly stating that the robot "identifies" Vanna White, the majority has usurped the fact finding function of the district court.

The majority holds that the first factor of the *AMF* test, strength of the mark, weighs in Vanna White's favor. It equates this factor with the strength of Vanna White's fame, citing *Allen v. National Video, Inc.*, 610 F.Supp. 612 (D.C.N.Y. 1985). *Allen* involved a celebrity look-alike who bore a remarkable resemblance to Woody Allen. *Id.* at 617. The instant matter involves a robot that bears no resemblance to Vanna White.

It is unclear whether the "mark" for which Vanna White seeks protection is her screen image or the imitation Wheel of Fortune. Although Vanna White is certainly famous for being famous, there is no evidence in the record that consumers identify the specific characteristics at issue, i.e., blond hair and fancy dress, solely with Vanna White. The majority ignores this important distinction.

The majority has glossed over the third *AMF* factor—similarity of the marks—the most important factor in this case. The majority finds this factor "ambiguous" because the common characteristics "identify" Vanna White. Majority Opinion at p. 1400. We are required, however, to compare marks in their entirety. *California Cooler, Inc. v. Loretto Winery*, 774 F.2d 1451 (9th Cir.1985). In this matter, the consumer is confronted with two entities. One is Vanna White. The other is a robot. No one could reasonably confuse the two.

Certain aspects of a mark may have a greater impact than other aspects. When a mark has certain salient characteristics, they are given greater weight. *Country Floors, Inc. v. Gepner*, 930 F.2d 1056 (3d Cir.1991); *Henri's Food Products Co. v. Kraft, Inc.*, 717 F.2d 352 (7th Cir.1983); *Giant Food, Inc. v. Nations' Foodservice, Inc.*, 710 F.2d 1565 (Fed.Cir.1983). The face of Vanna White and the features of the robot are obviously more important characteristics than their hair, dress, physical proportions, jewelry, or the decoration of the set. Thus, the features of the robot and Vanna White should be given great weight in the analysis. It should be clear to anyone viewing the commercial advertisement that the crude features of the robot are very dissimilar to Vanna White's attractive and human face.

The majority's analysis of the intent or seventh factor in *AMF* is similarly suspect. The question presented here is whether there is any evidence in the record that Samsung intended to confuse consumers. It did not.

Where the circumstances are sufficient to eliminate any likelihood of confusion, this court has repeatedly held that there is no claim for a violation of the Lanham Act. *See Toho Co., Ltd. v. Sears, Roebuck & Co.*, 645 F.2d 788 (9th Cir.1981) ("Bagzilla" garbage bags did not infringe "Godzilla" mark); *Walt Disney Prods. v. Air Pi-*

*rates,* 581 F.2d 751 (9th Cir.1978), *cert. denied sub nom O'Neill v. Walt Disney Prods,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979) ("Silly Sympathies" in adult comic books did not infringe on Disney's "Silly Symphonies"). The use of a robot in the commercial advertisement makes it clear that Vanna White did not endorse Samsung's product.

Although likelihood of confusion may usually be a factual question, "courts retain an important authority to monitor the outer limits of substantial similarity within which a jury is permitted to make the factual determination whether there is a likelihood of confusion." *Warner Bros., Inc. v. American Broadcasting Cos., Inc.,* 720 F.2d 231, 246 (2d Cir.1983). "[S]ummary judgment is appropriate if the court is satisfied that the products or marks are so dissimilar that no question of fact is presented." *Universal City Studios, Inc. v. Nintendo Co., Ltd.,* 746 F.2d 112 (2d Cir.1984).

"There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Vanna White has presented no evidence of actual deception. Thus, she has failed to raise a genuine issue of material fact that would support her Lanham Act claim.

## IV.

### SAMSUNG'S FIRST AMENDMENT DEFENSE

The majority gives Samsung's First Amendment defense short shrift because "[t]his case involves a true advertisement run for the purpose of selling Samsung VCRs." Majority opinion at p. 1401. I respectfully disagree with the majority's analysis of this issue as well.

The majority's attempt to distinguish this case from *Hustler Magazine v. Falwell,* 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), and *L.L. Bean, Inc. v. Drake Publishers, Inc.,* 811 F.2d 26 (1st Cir.1987), is unpersuasive. The majority notes that the parodies in those cases were made for the purpose of poking fun at the Reverend Jerry Falwell and L.L. Bean. But the majority fails to consider that the defendants in those cases were making fun of the Reverend Jerry Falwell and L.L. Bean for the purely commercial purpose of selling soft-core pornographic magazines.

Generally, a parody does not constitute an infringement on the original work if it takes no more than is necessary to "conjure up" the original. *Walt Disney Prods. v. Air Pirates,* 581 F.2d 751, 756 (9th Cir. 1978). The majority has failed to consider these factors properly in deciding that Vanna White may bring an action for damages solely because the popularity of the fame show, Wheel of Fortune.

The effect of the majority's holding on expressive conduct is difficult to estimate. The majority's position seems to allow any famous person or entity to bring suit based on any commercial advertisement that depicts a character or role performed by the plaintiff. Under the majority's view of the law, Gene Autry could have brought an action for damages against all other singing cowboys. Clint Eastwood would be able to sue anyone who plays a tall, soft-spoken cowboy, unless, of course, Jimmy Stewart had not previously enjoined Clint Eastwood. Johnny Weismuller would have been able to sue each actor who played the role of Tarzan. Sylvester Stallone could sue actors who play blue-collar boxers. Chuck Norris could sue all karate experts who display their skills in motion pictures. Arnold Schwarzenegger could sue body builders who are compensated for appearing in public.

The majority's reading of the Lanham Act would provide a basis for "commercial" enterprises to maintain an action for section 43(a) violations even in the absence of confusion or deception. May Black and Decker, maker of the "Dustbuster" portable vacuum, now sue "Bust-dusters," the Los Angeles topless cleaning service. Can the Los Angeles Kings hockey team state a cause of action against the City of Las Vegas for its billboards reading "L.A. has the Kings, but we have the Aces."

**1408**

Direct competitive advertising could also be affected. Will BMW, which advertises its automobiles as "the ultimate driving machine," be able to maintain an action against Toyota for advertising one of its cars as "the ultimate saving machine"? Can Coca Cola sue Pepsi because it depicted a bottle of Coca Cola in its televised "taste test"? Indeed, any advertisement which shows a competitor's product, or any recognizable brand name, would appear to be liable for damages under the majority's view of the applicable law. Under the majority's analysis, even the depiction of an obvious facsimile of a competitor's product may provide sufficient basis for the maintenance of an action for damages.

### V.

### CONCLUSION

The protection of intellectual property presents the courts with the necessity of balancing competing interests. On the one hand, we wish to protect and reward the work and investment of those who create intellectual property. In so doing, however, we must prevent the creation of a monopoly that would inhibit the creative expressions of others. We have traditionally balanced those interests by allowing the copying of an idea, but protecting a unique expression of it. Samsung clearly used the idea of a glamorous female game show hostess. Just as clearly, it avoided appropriating Vanna White's expression of that role. Samsung did not use a likeness of her. The performer depicted in the commercial advertisement is unmistakably a lifeless robot. Vanna White has presented no evidence that any consumer confused the robot with her identity. Indeed, no reasonable consumer could confuse the robot with Vanna White or believe that, because the robot appeared in the advertisement, Vanna White endorsed Samsung's product.

I would affirm the district court's judgment in all respects.