125 F.3d 806
 44 U.S.P.Q.2d 1189, 47 Fed. R. Evid. Serv. 964,
25 Media L. Rep. 2345, 97 Cal. Daily Op. Serv. 7521,
97 Daily Journal D.A.R. 12,120
 George WENDT, an individual; John Ratzenberger, an
individual, Plaintiffs-Appellants.
v.
HOST INTERNATIONAL, INC., a Delaware corporation; Defendant-Appellee,
and
Paramount Pictures Corporation, a Delaware corporation,
Defendant-Intervenor.
 No. 96-55243.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 11, 1997.
Decided Sept. 22, 1997.
 
 David A. Pash, Kinsella, Boesch, Fujikawa & Towle, Los Angeles, CA, for plaintiffs-appellants.
 William T. Rintala, Rintala, Smoot, Jaenicke & Rees, Los Angeles, CA, for defendants-appellees.
 Robert S. Chapman, Greenberg, Glusker, Fields, Claman & Machtinger, Los Angeles, CA, for defendant-intervenor.
 Appeal from the United States District Court for the Central District of California; Manuel L. Real, District Judge, Presiding. D.C. No. CV-93-142-R.
 Before: FLETCHER and TROTT, Circuit Judges, and JENKINS,* District Judge.
 FLETCHER, Circuit Judge:
 
 
 1
 Actors George Wendt and John Ratzenberger appeal the district court's grant of summary judgment in favor of Host International, Inc. ("Host") and applicant in intervention Paramount Pictures Corporation ("Paramount"), dismissing their action for violations of the Lanham Act, 15 U.S.C. § 1125(a), and California's statutory and common law right of publicity. We reverse.
 
 I. OVERVIEW
 
 2
 Wendt and Ratzenberger argue that the district court erred in dismissing their action because they have raised issues of material fact as to whether Host violated their trademark and publicity rights by creating animatronic robotic figures (the "robots") based upon their likenesses without their permission and placing these robots in airport bars modeled upon the set from the television show Cheers. They also appeal the district court's orders excluding appellants' survey evidence, barring presentation of expert testimony, and awarding Host and Paramount attorney's fees. We have jurisdiction, 28 U.S.C. § 1291, and we reverse and remand for trial.
 
 II. PROCEDURAL HISTORY
 
 3
 In Wendt v. Host, 1995 WL 115571 (9th Cir.1995) ("Wendt I "), we reversed the first grant of summary judgment in this action and remanded. We held that appellants' state law causes of action were not preempted by federal copyright law and that disputed issues of material fact precluded summary judgment because the district court's comparison of photographs of appellants Wendt and Ratzenberger with photographs of the animatronic figures was not sufficient to resolve their claims under Cal. Civ.Code § 3344:
 
 
 4
 The question here is whether the three dimensional animatronic figures are sufficiently similar to plaintiffs to constitute their likenesses. Based on the limited record before us, it cannot be said as a matter of law that the figures are so dissimilar from plaintiffs that no reasonable trier of fact could find them to be 'likenesses.' That question must be determined by a comparison of the actual, three-dimensional entities.
 
 
 5
 1995 WL 115571 at * 2. We concluded that this comparison must be decided without reference to the context in which the image appears. Id. (citing White v. Samsung Elec. Am., Inc., 971 F.2d 1395, 1397 (9th Cir.1992), cert. denied., 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 660 (1993)). We found that there were disputed issues of material fact concerning the appellants' common law right of publicity claims because the similarity between appellants' physical characteristics and those of the robots is disputed. Id. at * 3. Finally, we held that the appellants' claims for unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), require the application of a "well settled eight factor test" to determine whether Host's conduct has created a likelihood of confusion as to whether appellants were endorsing Host's product. Id.
 
 
 6
 Upon remand, the district court granted summary judgment for a second time after an in-court inspection of the robots. It held that it could not "find, by viewing both the robotics and the live persons of Mr. Wendt and Mr. Ratzenberger, that there is any similarity at all ... except that one of the robots, like one of the plaintiffs, is heavier than the other ... The facial features are totally different." The district court then awarded attorney's fees to Host and Paramount pursuant to Cal. Civ.Code § 3344.
 
 
 7
 Appellants argue that despite the district court's comparison of the animatronic figures and the appellants, dismissal was inappropriate because material issues of fact remain as to the degree to which the animatronic figures appropriate the appellants' likenesses. Appellants claim that the district court erred in determining that the robots were not likenesses of the appellants because the "likeness" need not be identical or photographic. Further, they argue that the likeness determination is an issue for the jury to decide in this case. We agree.
 
 III. ANALYSIS
 
 8
 We review a grant of summary judgment de novo. Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir.1994). We must determine, viewing the evidence in the light most favorable to the nonmoving party, whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law. Id. We are not to weigh the evidence or determine the truth of the matter, but only to determine whether there is a genuine issue for trial. Id. The district court's rulings excluding damage evidence and expert testimony are governed by an abuse of discretion standard, and should not be reversed absent some prejudice. Masson v. New Yorker Magazine, Inc., 85 F.3d 1394, 1399 (9th Cir.1996). Our review is governed by the 'law of the case' doctrine, which prevents courts from "reconsidering an issue previously decided by the same court, or a higher court in the identical case." Securities Investor Protection Corp. v. Vigman, 74 F.3d 932, 937 (9th Cir.1996).
 
 A. The Statutory Right of Publicity
 
 9
 California Civil Code § 3344 provides in relevant part:
 
 
 10
 [a]ny person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, ... for purposes of advertising or selling, ... without such person's prior consent ... shall be liable for any damages sustained by the person or persons injured as a result thereof.
 
 
 11
 In White, 971 F.2d at 1397, we ruled that a robot with mechanical features was not a "likeness" under § 3344. However, we specifically held open the possibility that a manikin molded to Vanna White's precise features, or one that was a caricature or bore an impressionistic resemblance to White might become a likeness for statutory purposes. Id. The degree to which these robots resemble, caricature, or bear an impressionistic resemblance to appellants is therefore clearly material to a claim of violation of Cal. Civ.Code § 3344. Summary judgment would have been appropriate upon remand only if no genuine issues of material fact concerning that degree of resemblance were raised by appellants. Fed.R.Civ.P. 56.
 
 
 12
 Despite the district court's assertions that no reasonable jury could find that the robots are "similar in any manner whatsoever to Plaintiffs," we respectfully disagree. Without making any judgment about the ultimate similarity of the figures to the appellants, we conclude from our own inspection of the robots that material facts exist that might cause a reasonable jury to find them sufficiently "like" the appellants to violate Cal. Civ.Code § 3344.
 
 
 13
 We reject appellees' assertion that Fleet v. CBS, 50 Cal.App.4th 1911, 58 Cal.Rptr.2d 645 (1996) is new controlling authority that requires us to revisit the determination on first appeal that appellants' § 3344 claims are not preempted by federal copyright law. Wendt I, 1995 WL 115571, at * 1. Fleet is not controlling new authority on the preemption issue. It holds that an actor may not bring an action for misappropriation under Cal. Civ.Code § 3344 when the only claimed exploitation occurred through the distribution of the actor's performance in a copyrighted movie. Id. at 651 ("Appellants may choose to call their claims misappropriation of right to publicity, but if all they are seeking is to prevent a party from exhibiting a copyrighted work they are making a claim equivalent to an exclusive right within the general scope of copyright.") (internal quotations omitted).
 
 
 14
 Appellants here are not seeking to prevent Paramount from exhibiting its copyrighted work in the Cheers series. As we stated in Wendt I, their "claims are not preempted by the federal copyright statute so long as they 'contain elements, such as the invasion of personal rights ... that are different in kind from copyright infringement.' " Wendt I, 1995 WL 115571 at * 1 (quoting Waits v. Frito-Lay, Inc., 978 F.2d 1093, 1100 (9th Cir.1992)) (citing H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132 (1976)). The Fleet court acknowledged that it simply found a fact-specific exception to the general rule that "as a general proposition section 3344 is intended to protect rights which cannot be copyrighted." Fleet, 58 Cal.Rptr.2d at 649.
 
 
 15
 Appellants' claims are not preempted by federal copyright law. Issues of material fact exist concerning the degree to which the robots are like the appellants. We reverse the grant of summary judgment on the claim under Cal. Civ.Code § 3344.B. Common-Law Right of Publicity
 
 
 16
 California recognizes a common law right of privacy that includes protection against appropriation for the defendant's advantage of the plaintiff's name or likeness. Eastwood v. Super. Ct. for Los Angeles County, 149 Cal.App.3d 409, 198 Cal.Rptr. 342, 347 (Cal.Ct.App.1983). The right to be protected against such appropriations is also referred to as the "right of publicity." Id. A common law cause of action for appropriation of name or likeness may be pleaded by alleging 1) the defendant's use of the plaintiff's identity; 2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; 3) lack of consent; and 4) resulting injury. Id. (citing Prosser, Law of Torts § 117, 804-07 (4th ed. 1971)).
 
 
 17
 The so-called right of publicity means in essence that the reaction of the public to name and likeness, which may be fortuitous or which may be managed and planned, endows the name and likeness of the person involved with commercially exploitable opportunities. The protection of name and likeness from unwarranted intrusion or exploitation is the heart of the law of privacy.
 
 
 18
 Lugosi v. Universal Pictures, 25 Cal.3d 813, 160 Cal.Rptr. 323, 603 P.2d 425, 431 (1979).
 
 
 19
 We have held that this common-law right of publicity protects more than the knowing use of a plaintiff's name or likeness for commercial purposes that is protected by Cal. Civ.Code § 3344. It also protects against appropriations of the plaintiff's identity by other means. See White, 971 F.2d at 1398 ("[a] rule which says that the right of publicity can be infringed only through the use of nine different methods of appropriating identity merely challenges the clever advertising strategist to come up with the tenth."); see also Abdul-Jabbar v. General Motors Corp., 85 F.3d 407, 415 (9th Cir.1996) (common law right protects identity, which is more flexible than the statutory 'laundry list' of particular means of appropriation); Midler v. Ford Motor Co., 849 F.2d 460, 463-64 (9th Cir.1988) (concluding that there was a claim for violation under common law right of publicity, but not Cal. Civ.Code § 3344, for use of sound-alike singer in advertisement); Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821, 827 (9th Cir.1974) (concluding that there was a common-law claim from use of an identifiable race car in an advertisement, even though name or likeness of famous driver was not visible).
 
 
 20
 Appellees argue that the figures appropriate only the identities of the characters Norm and Cliff, to which Paramount owns the copyrights, and not the identities of Wendt and Ratzenberger, who merely portrayed those characters on television and retain no licensing rights to them. They argue that appellants may not claim an appropriation of identity by relying upon indicia, such as the Cheers Bar set, that are the property of, or licensee of, a copyright owner. Sinatra v. Goodyear Tire & Rubber Co., 435 F.2d 711, 716 (9th Cir.1970).
 
 
 21
 Appellants freely concede that they retain no rights to the characters Norm and Cliff; they argue that the figures, named "Bob" and "Hank," are not related to Paramount's copyright of the creative elements of the characters Norm and Cliff. They argue that it is the physical likeness to Wendt and Ratzenberger, not Paramount's characters, that has commercial value to Host.
 
 
 22
 While it is true that appellants' fame arose in large part through their participation in Cheers, an actor or actress does not lose the right to control the commercial exploitation of his or her likeness by portraying a fictional character. Lugosi, 160 Cal.Rptr. 323, 603 P.2d at 431.
 
 
 23
 Appellants have raised genuine issues of material fact concerning the degree to which the figures look like them. Because they have done so, appellants have also raised triable issues of fact as to whether or not appellees sought to appropriate their likenesses for their own advantage and whether they succeeded in doing so. See Midler, 849 F.2d at 463. The ultimate issue for the jury to decide is whether the defendants are commercially exploiting the likeness of the figures to Wendt and Ratzenberger intending to engender profits to their enterprises. See Eastwood, 198 Cal.Rptr. at 349 ("The first step toward selling a product or service is to attract the consumer's attention.") We therefore reverse the grant of summary judgment on the common law right of publicity claim.
 
 C. Unfair Competition
 
 24
 Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)) prohibits, inter alia, the use of any symbol or device which is likely to deceive consumers as to the association, sponsorship, or approval of goods or services by another person. The appellants' claim is for false endorsement-that by using an imitation of their unique physical characteristics, Host misrepresented their association with and endorsement of the Cheers bars concept.
 
 
 25
 In Waits, 978 F.2d at 1110, we held such a claim actionable under § 43(a):
 
 
 26
 [a] false endorsement claim based on the unauthorized use of a celebrity's identity ... alleges the misuse of a trademark, i.e., a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval of the product.
 
 
 27
 In Wendt I we held that appellants would have a claim if "Host's conduct had created a likelihood of confusion as to whether plaintiffs were endorsing Host's product." 1995 WL 115571 at * 3. In order to determine whether or not such confusion is likely to occur, we referred to a "well settled eight factor test" to be applied to celebrity endorsement cases, Newton v. Thomason, 22 F.3d 1455, 1462 (9th Cir.1994). This test requires the consideration of:
 
 1) the strength of the plaintiff's mark;[1]
 
 28
 2) relatedness of the goods;
 
 
 29
 3) similarity of the marks;
 
 
 30
 4) evidence of actual confusion;
 
 
 31
 5) marketing channels used;
 
 
 32
 6) likely degree of purchaser care;
 
 
 33
 7) defendant's intent in selecting the mark;
 
 
 34
 8) likelihood of expansion of the product lines.
 
 
 35
 Id. at 1462 (citing AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341 (9th Cir.1979)).
 
 
 36
 In Wendt I we concluded that one of the primary factors of this test was the 'similarity of the marks' and because there was a disputed issue of material fact as to that issue, summary judgment was inappropriate on this claim.
 
 
 37
 On remand, however, the district court simply compared the robots with the appellants in the courtroom and awarded judgment because there was "no similarity at all." The district court erred in failing independently to analyze any of the other relevant factors to determine whether or not there was a likelihood of confusion to consumers as to whether appellants sponsored, approved of, or were otherwise associated with the Cheers bars.
 
 
 38
 The Lanham Act's 'likelihood of confusion' standard is predominantly factual in nature. Summary judgment is inappropriate when a jury could reasonably conclude that most of the factors weigh in a plaintiff's favor. Abdul-Jabbar, 85 F.3d at 413 (9th Cir.1996). See also MDT Corporation v. New York Stock Exchange, Inc., 858 F.Supp. 1028, 1032 (C.D.Cal.1994) (summary judgment disfavored in trademark cases because the ultimate issue of likelihood of confusion is so inherently factual).
 
 
 39
 Application of these factors indicates that the district court erred in rejecting appellants' Lanham Act claim at the summary judgment stage because a jury could reasonably conclude that most of the factors weigh in appellants' favor. Wendt and Ratzenberger were principal players on Cheers, a popular television show. They are clearly well-known among the target customers of Host's Cheers bars. For the purposes of this analysis, a jury could reasonably conclude that their mark is strong.
 
 
 40
 For the same reason, their 'goods' (their skill and fame as actors) are obviously related to Host's 'goods' (the products sold in the Cheers bars and the bars themselves) even if they are not strictly competitive. The issue is whether a consumer would be confused as to Wendt and Ratzenberger's association with or sponsorship of Host's bars. See White, 971 F.2d at 1400 ("In cases concerning confusion over celebrity endorsement, the plaintiff's 'goods' concern the reasons for or source of the plaintiff's fame.") The source of their fame and the Host bars are identical: the Cheers television series. A jury could conclude that this factor weighs in appellants' favor because it would be reasonable for a customer to be confused as to the nature of Wendt and Ratzenberger's association with Host's Cheers bars and the goods sold there.
 
 
 41
 The third factor, the similarity of the marks, is the primary issue in dispute. Because appellants have raised triable issues of material fact concerning the degree to which the robots resemble the appellants, a reasonable jury might find that this factor weighs in appellants' favor. Under the Lanham Act, in camera inspection is not sufficient; the district court must view the marks "as they appear in the marketplace." E & J Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir.1992).
 
 
 42
 Appellants presented evidence of actual confusion, the fourth factor. Both Ratzenberger and Wendt stated in their declarations that they have been approached by members of the public who commented on the similarity between the appellants and the robots at the Cheers airport bars: "The usual comment is some variation on 'Hey George, I just had a drink with you in Kansas City.' " They also submitted evidence of consumer confusion to the district court prior to summary judgment in the form of survey evidence. The court rejected this evidence as "not a good survey." For reasons detailed below, this evidence should not have been excluded. Sufficient evidence exists by which a reasonable jury might infer actual consumer confusion.
 
 
 43
 The fifth factor, marketing channels used, weighs in the appellants' favor. The allegation is that Host is appropriating appellants' likenesses because the target audience of the Cheers bars are customers who are fans of the television series. Such a similarity in marketing channels suggests that there is at least a likelihood of consumer confusion.
 
 
 44
 The sixth factor, likely degree of purchaser care, weighs in favor of appellants as well. Consumers are not likely to be particularly careful in determining who endorses or is affiliated with an airport bar in which they might purchase only a single beverage. They will be even less likely to scrutinize the source of the animatronic figures which are not for sale, but are used instead to attract patrons to the bars. This low degree of care makes confusion of sponsorship likely. See White, 971 F.2d at 1400 ("consumers are not likely to be particularly careful in determining who endorses VCR's, making confusion as to their endorsement more likely.")
 
 
 45
 The seventh factor is defendant's intent in selecting the mark. Appellants have alleged facts that could give rise to an inference that Host intended to confuse customers as to Wendt and Ratzenberger's sponsorship or endorsement of the Cheers bars by creating robots with their physical characteristics. See AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 354 (9th Cir.1979) ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."). In their opposition to summary judgment appellants submitted evidence that Host intentionally designed the animatronic figures to resemble Wendt and Ratzenberger and that it recognized from the outset that the value of the association with Wendt and Ratzenberger themselves was "a major drawing card of the Cheers concept." After being advised that appellants would not agree to the use of their likenesses, Host altered the robots cosmetically, named them "Hank" and "Bob,"[2] and refused to recast them into a "friendly neighborhood couple," as they were advised to do by Paramount. Based on this evidence, an inference can be raised that Host intended to exploit the appellants' celebrity by confusion as to the similarity between the figures and the appellants.
 
 
 46
 We have found that the eighth factor, likelihood of expansion of the product lines, "does not appear apposite to a celebrity endorsement case," White, 971 F.2d at 1401. Here, however, Ratzenberger has offered evidence that he would like to appear in advertisements for beer and has declined offers from small breweries in order to be available to a large brewery. "Inasmuch as a trademark owner is afforded greater protection against competing goods, a 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." Sleekcraft, 599 F.2d at 354 (citing Restatement of Torts § 731(b)). This factor therefore weighs in appellants' favor as the potential exists that in the future Ratzenberger's endorsement of other beers would be confused with his alleged endorsement of the beers sold at Host's bars.
 
 
 47
 A reasonable jury could conclude that most of the factors weigh in appellants' favor and that Host's alleged conduct creates at least the likelihood of consumer confusion. Whether appellants' Lanham Act claim should succeed, of course, is a matter for the jury. Accordingly, we reverse the dismissal of the unfair competition claim and remand.
 
 D. Exclusion of Survey Evidence
 
 48
 In their opposition to Paramount's summary judgment motion, appellants offered into evidence the results of a consumer survey taken in the vicinity of the Cheers bars at the Cleveland and Kansas City airports. The district court refused to admit the evidence, saying that the evidence was "not a good survey."
 
 
 49
 As the record stood, the refusal was an abuse of discretion. In trademark cases, surveys are to be admitted as long as they are conducted according to accepted principles and are relevant. E & J Gallo Winery, 967 F.2d at 1280; see also Prudential Ins. Co. of Am. v. Gibraltar Fin. Corp., 694 F.2d 1150, 1156 (9th Cir.1982). Challenges to survey methodology go to the weight given the survey, not its admissibility. Prudential Ins., 694 F.2d at 1156. However, because of the paucity of the record, upon remand, the parties should have the opportunity respectively to lay a foundation for the admission of the survey or to challenge the adequacy of the foundation.
 
 E. Exclusion of Expert Testimony
 
 50
 Prior to the first appeal in this case the district court issued a Preclusion Order barring the introduction of expert testimony as a sanction against appellants' former counsel for failure to disclose damage evidence and for being late disclosing experts. Upon remand, the district court denied appellants' request that it vacate its order.
 
 
 51
 The initial Preclusion Order was issued on August 9, 1993 as a sanction against appellants' former counsel. At that time, counsel's failure to comply with discovery rules potentially prejudiced Host and Paramount's ability to prepare adequately for trial. Today, that is not so. Both parties now have ample opportunity to begin the expert disclosure procedure anew.
 
 
 52
 Wanderer v. Johnston, 910 F.2d 652, 656 (9th Cir.1990), requires us to determine whether a sanction is proper under a five-factor test analyzing: 1) the public's interest in expeditious resolution of litigation; 2) the court's need to manage its docket; 3) the risk of prejudice to the defendants; 4) the public policy favoring disposition of cases on their merits; 5) the availability of less drastic sanctions. We conclude that under this test, the Preclusion Order is no longer proper. Less drastic sanctions are available and the defendants are no longer prejudiced by the actions of appellants' former counsel. We grant appellants' request to vacate the Preclusion Order upon remand. However, the district court, may, in its discretion, impose reasonable monetary sanctions upon appellants' former counsel for failure to comply with discovery rules.
 
 F. Attorney's Fees
 
 53
 Because we reverse the grant of summary judgment under Cal. Civ.Code § 3344, we reverse the grant of attorney's fees to Host and Paramount and deny their requests for attorney's fees on appeal.
 
 IV. CONCLUSION
 
 54
 The grant of summary judgment is reversed and the case is remanded to the district court for trial. The admission of the survey evidence should be reconsidered at trial. The Preclusion Order is vacated and appropriate sanctions other than preclusion may be considered. The grant of attorney's fees is reversed.
 
 
 55
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Bruce S. Jenkins, Senior United States District Judge for the District of Utah, sitting by designation
 
 
 [1]
 In a case involving confusion over endorsement by a celebrity plaintiff, 'mark' means the celebrity's persona and the strength of the mark refers to the level of recognition the celebrity enjoys. White, 971 F.2d at 1400
 
 
 [2]
 Until that point "Hank" was referred to in the record as "Cliff" and "Bob" as "Norm."