**AMERSHAM PHARMACIA BIOTECH, INC., Plaintiff,**

v.

**THE PERKIN–ELMER CORPORATION, Defendant.**

No. C–97–04203 CRB/EAI.

United States District Court, N.D. California, San Jose Division.

Jan. 31, 2000.

Richard J. Warburg, Jeffrey W. Guise, Lyon & Lyon LLP, La Jolla, California, Bernard F. Rose, San Jose, California, for Amersham Pharmacia BioTech, Inc.

Edward R. Reines, Maureen K. Toohey, Weil, Gotshal & Manges LLP, Menlo Park, California, for Perkin–Elmer Corporation; PE Applied Biosystems Division.

## ORDER GRANTING MOTION TO AMEND Civil L.R. 16–9(b) RESPONSE CHART

INFANTE, Chief United States Magistrate Judge.

### I. INTRODUCTION

On December 20, 1999, The Perkin–Elmer Corporation ("Perkin–Elmer") moved, pursuant to Civil L.R. 16–6(d) and 16–9(c), for leave to amend its Civil L.R. 16–9(b) Response Chart ("Response Chart") to add Japanese Patent Publication No. 5060698A, citing "excusable subsequent discovery" of this additional prior art reference ("the Motion"). In support of the Motion, Perkin–Elmer submitted the Declaration of Edward R. Reines ("Reines Decl."), with exhibits, and the Declaration of Michael W. Hunkapiller ("Hunkapiller Decl."). With its opposition to Perkin–Elmer's Motion, Amersham Pharmacia Biotech, Inc. ("Amersham") submitted a declaration from Jeffrey W. Guise ("the Guise Decl."), with exhibits. Having reviewed and considered all of the above, the Court GRANTS the Motion, for the reasons set forth below.

### II. BACKGROUND

In November 1997 Amersham sued Perkin–Elmer for infringement of U.S. Patent No. 5,688,648 ("the '648 patent"). On September 17, 1998, after receiving from Amersham its Civil L.R. 16–9(a) Claim Chart, Perkin–Elmer served its Civil L.R. 16–9(b) Response Chart identifying those prior art references which Perkin–Elmer contends anticipate the claims of the '648 patent or render them obvious. The parties filed a joint claim construction statement for the '648 patent, as required by Civil L.R. 16–11(b), in November 1998. In December 1998 the action was reassigned from Judge Hendersen to Judge Breyer. On January 15, 1998, Judge Breyer granted Perkin–Elmer's motion to stay the case and relate it to other pending litigation.[1] Reines Decl., Ex. A.

Perkin–Elmer's counsel testifies that Perkin–Elmer initiated its search for prior art references to the '648 patent well before serving the Response Chart on September 17, 1998. Reines Decl., ¶ 2. Perkin–Elmer retained specialist Global Prior Art to perform a worldwide search and, in addition, counsel also conducted searches. *Id.* Both the Global Art and counsel's searches included, but were not limited to, patents, patent applications, and articles relevant to the claims of the '648 patent, but neither search located Japanese Patent Publication No. 5060698A. *Id.* On December 4, 1998, a newly hired search firm specializing in Japanese prior art searches identified Japanese Patent Publication No. 5060698A, an unexamined application, as potential prior art to the '648 patent. Reines Decl., ¶ 2. Perkin–Elmer obtained an English translation of the document about December 14, 1998. *Id.*

On February 2, 1999, Perkin–Elmer's counsel produced Japanese Patent Publication No. 5060698A to Amersham's counsel in a closely related case, *Amersham Pharmacia Biotech, Inc. v. Celera Genomics Corporation,* Civil Action No. 98–591–RRM (D:Delaware), filed in October 1998.[2] Reines Decl., ¶ 3. On July 12, 1999, this Court vacated the stay and held a case management conference, during which Perkin–Elmer raised the proposed amendment to its Response Chart. Reines Decl., ¶ 4. Shortly thereafter, Per-

---

1. On February 25, 1998, Judge Breyer ordered the related case, *Perkin–Elmer Corporation et al. v. Amersham Pharmacia Biotech UK Ltd., et al.,* Civ. No. C–98–01015 CRB, to arbitration under a licensing agreement between the parties. In that Order, Judge Breyer stayed this action, No. C–97–04203, and Nos. C–98–01015 and 98–04167, until May 14, 1999.

2. In the *Celera* action, Amersham sued Celera for infringement of the same patent in suit here, and Perkin–Elmer became a party when the two companies merged in April 1999. On July 26, 1999, the *Celera* case was dismissed without prejudice. Reines Decl., Ex. B. The parties agreed that documents produced in the *Celera* case would be used in this action. *See* Updated Joint Proposed Case Management Statement and Proposed Order, Reines Decl., Ex. F at ¶ 12(d) and (g).

kin–Elmer produced the Japanese document in this action, Reines Decl., Ex. C, and asked Amersham to stipulate to the amendment. *See* Reines Decl., Ex. D. Amersham's response (July 30) was to request an English translation and ask why the Japanese reference was not included in the Response Chart. Reines Decl., Ex. E. On August 5, Perkin–Elmer provided Amersham with the English translation, explaining that the Japanese document was not located until December 1998. Reines Decl., Ex. G. Perkin–Elmer raised the proposed amendment again at the August 9 case management conference. Reines Decl., ¶ 4; Ex. F, ¶ 12(a).

The parties haggled over this matter from at least the July 12, 1999 case management conference until November 15, 1999, *see* Reines Decl., Ex. D–P, when Amersham finally refused to stipulate to the amendment, ostensibly because the reference is "merely cumulative of the other references already of record[.]" Reines Decl., Ex. P. On November 18, the Court authorized the instant Motion, which Perkin–Elmer filed on December 20.[3]

During October and November 1999 the parties filed their briefs on the claim construction, and the Court conducted the *Markman* hearing on December 10, 1999. Thereafter, the parties filed post-hearing briefs on January 10, 2000. The Court presently has claim construction under submission. As yet the Court has not set a fact or expert discovery cut-off, or a trial date, in this action.

### III. LEGAL STANDARD

The Civil Local Rules of this District establish procedures which expand the initial disclosure requirements of Rule 26(a), F.R.Civ.P., in patent litigation. Civil L.R. 16–6 provides:

**Disclosures and Pretrial Proceedings in Patent Cases.**

**(a) Scope.** In addition to complying with Civil L.R. 16–5 and F.R.Civ.P. 26, in all civil actions filed in this court which include a claim of patent infringement, or which seek a declaratory judgment that a patent is not infringed or is invalid, *the parties shall also comply with the disclosure requirements and procedures set forth in Civil L.R. 16–6 through 16–11.*

\* \* \* \* \* \*

**(d) Duty to Supplement Disclosures.** Unless otherwise ordered by the court, *disclosures or charts governed by these are subject to the duty of supplementation of F.R.Civ.P. 26(e).*

Civil L.R. 16–7, Initial Disclosure of Asserted Claims and Prior Art in Patent Cases, requires a party, within 45 days of filing a pleading asserting a patent infringement claim, to make an "Initial Disclosure of Asserted Claims" and produce specified documents to the opposing party. Civil L.R. 16–7(a)–(c). No later than 55 days after service of the "Initial Disclosure of Asserted Claims," each opposing party must make an "Initial Disclosure of Prior Art" and an accompanying document production. Civil L.R. 16–7(d)–(f). Civil L.R. 16–8 addresses initial disclosures in patent cases for declaratory judgment.

Subsequent to making the initial disclosures, Civil L.R. 16–9(a) requires the party claiming infringement to serve a "claim chart." The claim chart must identify each claim of any patent in suit which is alleged to be infringed, and the infringing instrumentality, and state whether the infringement is claimed to be literal or under the doctrine of equivalents, where each element of each claim is found within an infringing instrumentality, and identify how the accusing party's own product embodies a particular claim. Civil L.R. 16–9(a). Sixty days after service of the claim chart, Civil L.R. 16–9(b) requires the accused infringer to serve a detailed "response chart." The response chart must disclose the identity of each item of prior art that anticipates the claim or renders it obvious, by its number, country of origin and

---

**3.** Over three months after receiving the English translation, Amersham served 34 wide-ranging document requests related to the Japanese patent publication. On January 11, 2000, Amersham moved to compel Perkin–Elmer to produce all the requested documents, and to compel the depositions of at least 11 witnesses, including Perkin–Elmer's outside litigation counsel and Japanese counsel. By Order dated January 18, 1999, the Court denied Amersham the discovery.

date of issue. Civil L.R. 16–9(b)(1). Each prior art publication must be identified by its title, date of publication, and where feasible, author and publisher. Civil L.R. 16–9(b)(1). The chart must also state whether a prior art (or combination of prior art) anticipates the claim or renders it obvious, where, specifically, within each item of prior art each claim element is found, and all other grounds of patent invalidity for any of the identified claims. Civil L.R. 16–9(b)(2)–(4). The accused infringer must also identify each opinion of counsel he relies upon to defend against an allegation of willful infringement. Civil L.R. 16–9(b)(5).

Perkin–Elmer brings this Motion pursuant to its duty of supplementation under Rule 26(e), F.R.Civ.P., and Civil L.R. 16–6(d), and the provisions of Civil L.R. 16–9(c). An amendment of a claims chart or response chart requires either the parties' stipulation, or the court's order. Civil L.R. 16–9(c). The court's order "shall be entered only upon a showing of excusable subsequent discovery of new information or clearly excusable neglect." Civil L.R. 16–9(c).

## IV. DISCUSSION

■ Perkin–Elmer seeks leave to amend its initial Response Chart to include Japanese Patent Publication No. 5060698A and relies on the Reines and Hunkapiller Declarations to demonstrate Perkin–Elmer's "excusable subsequent discovery of new information," i.e., the newfound Japanese patent reference. Amersham questions whether Perkin–Elmer already knew (or should have known) of the Japanese patent reference when it served the Response Chart in September 1998. Amersham cites a February 19, 1997 press release announcing a "strategic partnership" between Perkin–Elmer and Hitachi to develop and manufacture new genetic analysis systems, quoting Mr. Hunkapiller to the effect that the partnership "will make Hitachi's intellectual property available to Perkin–Elmer." Guise Decl., Ex. 2. Amersham infers that Perkin–Elmer "must have known" of the unexamined Japanese patent publication and, on this basis, accuses Perkin–Elmer of bad faith and undue delay in its disclosure of the document.

Mr. Reines declares that, despite independent searches by counsel and a competent consulting firm, Perkin–Elmer did not become aware of the Japanese patent publication until December 4, 1998, approximately eleven weeks after serving its Response Chart. Reines Decl., ¶ 2. Mr. Hunkapiller, who is a Senior Vice President of PE Corporation and President PE Biosystems Group, avers that he negotiated Perkin–Elmer's agreement to share intellectual property with Hitachi in 1997. He states that, in the course of those negotiations, Hitachi identified patents for use in the collaboration, but never brought to his attention Japan Patent Publication No. 5060698A. These declarations should dispose of Amersham's questions about Perkin–Elmer's diligence and prior knowledge of the publication through Hitachi. Amersham has offered no credible reason to suggest that the declarants' representations are not truthful. Amersham does not explain why Perkin–Elmer would deliberately omit the Japanese reference from the Response Chart, only to raise it with Amersham a few months later.

Amersham argues that the Civil L.R. 16–9(c) provision for "excusable subsequent discovery of new information" is limited to information not yet in existence at the time the party was required to serve its chart. Amersham is wrong. Civil L.R. 16–9(c) directs the Court to consider whether a party's subsequent discovery of information previously unknown to it is excused under the circumstances. Civil L.R. 16–9(c)'s provision for amendment accommodates the reality that identifying prior art is an inexact process.[4]

---

4. As Perkin–Elmer points out, Amersham's theory that "new information" is limited to prior art that comes into existence after the claim or response chart has been served renders the "excusable subsequent discovery" language meaningless. Its interpretation makes little sense, since almost all prior art would be in existence before claim and response charts are served. Amersham's interpretation also runs afoul of the duty to supplement disclosures expressly recognized in Rule 26(e), F.R.Civ.P., and Civil L.R. 16–6(d). Rule 26(e), F.R.Civ.P., requires a party to supplement or correct a discovery disclosure or response to include information *thereafter acquired* if the party learns that in some material respect

The definition of "prior art" is vast. Prior art includes technology or data publicly known, used, or "on sale" in this country, or described in patents and printed publications from anywhere in the world. *See* 35 U.S.C. § 102(a)–(b). To conduct a world-wide search, locate and disclose *all* potential prior art bearing on the patent-in-suit, within 55 days of service of the initial disclosure of asserted claims, and serve the response chart within 60 days after service of the claim chart—on pain of being precluded from using the information in the lawsuit—is a daunting task. Realistically, the party defending against an infringement claim may have to supplement his initial disclosures of prior art, and amend the required response chart, if his investigation is to unearth all potential prior art.[5]

Perkin–Elmer has made a showing that it was reasonably diligent in searching for prior art related to the '648 patent—a search the litigant had every incentive to perform—before it served the Response Chart. It discovered Japanese Patent Publication No. 5060698A shortly thereafter and, in light of the seven-month stay of proceedings, sought to amend its disclosures in a timely fashion. Perkin–Elmer thus has established "excusable subsequent discovery of new information." Civil L.R. 16–9(c).

The Court's overriding concern is preventing prejudice to the parties. Amersham has not demonstrated actual prejudice if Perkin–Elmer is allowed to amend the Response Chart. Amersham does not dispute that it was made aware of the Japanese patent publication as potential prior art to the '648 patent early in 1999 in the related *Celera* case. The instant case was stayed from mid-January to mid-July 1999 to accommodate Amersham's demand for arbitration in the related case *Perkin–Elmer v. Amersham,* Civ. No. 98–01015 CRB. When the stay was vacated in July, Perkin–Elmer promptly made its intention to amend the Response Chart known to Amersham and the Court, and sought a negotiated resolution. Amers-

ham received the English translation by August 5, 1999. Amersham was then fully able to evaluate the Japanese document's importance, without interpretation by Perkin–Elmer and without the discovery Amersham sought in its third set of document requests. In September and again in October, 1999, Perkin–Elmer explained its contention that the Japanese reference anticipates the '648 patent. Reines Decl., Exs. L, N; Guise Decl., Ex. 7.

Amersham contends that its position on claim construction is compromised if the amendment is allowed. While the Japanese document's relevance to the invalidity defenses of anticipation and obviousness is apparent, its relevance to claim construction remains a mystery, particularly as Amersham contends the document is "merely cumulative." Reines Decl., Ex. P. If Amersham considered the Japanese publication important to its claim construction, it had the opportunity to address the Japanese prior art when briefing those issues and at the claims construction hearing. Amersham chose not to address the Japanese prior art.

■ Amersham will have every opportunity to explore Japan Patent Publication No. 5060698A and the invalidity defenses during the balance of the litigation. Amersham suffers no actual prejudice by the amendment. Exclusion sanctions based on alleged discovery violations are generally improper absent undue prejudice to the opposing side. *Wendt v. Host International, Inc.,* 125 F.3d 806, 814 (9th Cir.1997). The possibility that the Japanese prior art might influence the outcome of the litigation in Perkin–Elmer's favor does not constitute prejudice. *See Deakyne v. Commissioners of Lewes,* 416 F.2d 290, 300 (3rd Cir.1969)(amendment is to be freely allowed in order to present the merits of the controversy, if the opposing party is not actually prejudiced: "[a]ppellee is prejudiced, of course, in that she gained a verdict which is now being reversed. But this is not the kind of prejudice contemplated by Rule 15(b)."). Nor is delay alone is a sufficient measure of prejudice. *Deakyne,* 416 F.2d at 300, n. 19.

---

the information disclosed is incomplete or incorrect. *See* Rule 26(e)(1)–(2), F.R.Civ.P.

**5.** Applying the "excusable subsequent discovery of new information" standard of Civil L.R. 16–

9(c) to an application to amend the patent holder's claim chart required by Civil L.R. 16–9(a) may call for a more stringent analysis.

In contrast, the result Amersham urges may prejudice Perkin–Elmer and deprive the trier of fact of relevant evidence if the Japanese patent publication is excluded from the litigation. This result is wholly unwarranted in the absence of any indicia of bad faith. *See Freeman v. Package Machinery Co.,* 865 F.2d 1331, 1341 (1st Cir.1988) (holding that lower court is well within its discretionary authority in declining to impose the extreme preclusion sanction, in the absence of wilfulness, bad faith or significant prejudice); *United States v. Sumitomo Marine & Fire Ins. Co.,* 617 F.2d 1365, 1369 (9th Cir.1980)(holding that a court's use of sanctions for a party's failure to comply with discovery orders must be tempered by due process requirements; the preclusion sanction should not be imposed when a party's failure to comply is due to inability and not willfulness or bad faith); 3 Moore, *Federal Practice and Procedure* (3d Ed.1998), ¶ 16.92[6][b]("Preclusion of evidence or testimony is a grave step, and is by no means an automatic response to a delayed disclosure.") Perkin–Elmer's proposed amendment satisfies Civil L.R. 16–9(c) and is consistent with Rule 26(e), F.R.Civ.P., and Civil L.R. 16–6(d). Civil L.R. 16–9(c) must be read in harmony with the standards of Rule 26(a) and 26(e), F.R.Civ.P. *See* Civil L.R. 1–2(b)(These local rules "shall be construed so as to be consistent with the Federal Rules....").

## V. ORDER

The Court finds that Perkin–Elmer's omission of the reference to Japanese Patent Publication No. 5060698A from its initial Response Chart was excusable and that Amersham is not prejudiced by an amendment including this prior art reference. Perkin–Elmer is granted leave to amend its Civil L.R. 16–9(b) Response Chart to include Japanese Patent Publication No. 5060698A. The amended Response Chart shall be served no later than February 10, 2000.

IT IS SO ORDERED.