**COMEDY III PRODUCTIONS, INC., a California corp., Plaintiff–Appellant,**

v.

**NEW LINE CINEMA, a Delaware corp., Defendant–Appellee.**

No. 98–55301.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 29, 1999

Decided Jan. 11, 2000

As Amended on Denial of Rehearing and Rehearing En Banc Feb. 4, 2000.

Robert N. Benjamin (argued), Caroline H. Mankey, Robert N. Benjamin, A Professional Corporation, for the appellant.

Stacey M. Byrnes (argued), William Grantham, Rosenfeld, Meyer & Susman, LLP, for the appellee.

Before: O'SCANNLAIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether a portion of a public domain film used in a motion picture is a trademark capable of protection under the Lanham Act.

I

In 1996, New Line Cinema ("New Line") released the theatrical motion picture, *The Long Kiss Goodnight,* which contained a clip from The Three Stooges' short film, *Disorder in the Court.* Pursuant to New Line's request, the district court took judicial notice of the motion picture's contents and found that the clip plays on a television set in the background of an interior scene for less than thirty seconds. Asserting that it owns all rights and interests in The Three Stooges, Appellant Comedy III Productions, Inc. ("Comedy III") sued New Line in the Superior Court of the State of California on April 4, 1997 for using the clip without its permission.

In its complaint, Comedy III sought damages for violation of the Lanham Act, 15 U.S.C. § 1125, and for unfair competition under the California Business and Professions Code §§ 17000, *et seq.* Comedy III also sought two claims for equitable relief: one for an accounting and the other for injunctions, both preliminary and permanent.

On May 13, 1997, New Line removed the lawsuit to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1441(b). The district court had subject matter jurisdiction over the case pursuant to 15 U.S.C. § 1121(a), which grants to federal district courts original jurisdiction over all actions arising under the Lanham Act, and 28 U.S.C. § 1331. The district court had supplemental jurisdiction over the state law claims

pursuant to 28 U.S.C. § 1367. Subsequently, on May 20, 1997, New Line filed a motion to dismiss Comedy III's complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). On June 16, 1997, the district court dismissed all claims in Comedy III's complaint, with leave to amend.

Comedy III then filed its First Amended Complaint on July 7, 1997, in which it renewed its four previous requests for damages and equitable relief. In addition, Comedy III sought damages for unfair competition (passing off), and damages for unfair competition (misappropriation). New Line again responded by filing a Rule 12(b)(6) motion to dismiss for failure to state a claim. On January 6, 1998, the district court granted New Line's second motion to dismiss and dismissed Comedy III's complaint with prejudice.[1]

Comedy III timely appeals.

II

■ The central issue before us is whether The Three Stooges clip used in *The Long Kiss Goodnight* is an enforceable trademark. In order to prevail on a Lanham Act claim, a plaintiff must prove the existence of a trademark and the subsequent use of that mark by another in a manner likely to create consumer confusion. When made successfully, these two arguments—known respectively as the "validity" and "infringement" prongs—form the basic allegations of trademark infringement. *See* J. Thomas McCarthy, *McCarthy on Trademarks* § 15:1 (4th ed.1998).

■ To prevail on its trademark claim—and those claims substantially dependent on a viable trademark claim[2]— Comedy III must show that the clip at

---

1. We note that the district court "dismissed the complaint" rather than dismissing "the action." Nevertheless, the record is clear that the district court's ruling was intended as a final order since it was with prejudice. *Cf. WMX Tech. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc).

2. Comedy III acknowledges that all but one of its claims—that for breach of implied contract—are either "based purely on trademark law" or are "substantially similar" to it.

issue is actually a cognizable trademark. That is, Comedy III must demonstrate that "the public recognizes [its] symbol as identifying [its] goods or services and distinguishing them from those of others." *Id.* Comedy III must make this argument by claiming either that (a) its "symbol" is inherently distinctive, or (b) that even if not inherently distinctive, the symbol has become distinctive through the acquisition of "secondary meaning." *Id.* It is upon this claim that Comedy III failed before the district court and fails before us.

Because the district court had difficulty in understanding how a clip of a short film could be a trademark, rather than the subject of copyright, it ordered Comedy III to provide further briefing explaining "the nature of the plaintiff's enforceable trademark interest in the [c]lip used by Defendant in ['*The Long Kiss Goodnight*.']" In response, Comedy III contended that it is not claiming a legally protected right in the clip itself, but rather in the "name, the characters, the likeness, and overall 'act' of The Three Stooges." Indeed, throughout its argument to this Court, Comedy III has asserted that this clip contains an enforceable trademark because it is particularly distinctive of The Three Stooges' comedy, whereas other clips from *Disorder in the Court* and other films by The Three Stooges are not so distinctive as to be trademarks.

Although film footage may indeed be protected by copyright, Comedy III has strenuously argued that it does not raise a copyright claim. Indeed, Comedy III could not do so even if it wanted to because any copyright has long expired and the film at issue is in the public domain. We all own it now.

■ Comedy III has not satisfied the dual elements of the 'validity' test by explaining how the film footage could contain a distinctive mark or how footage of The Three Stooges' name, voices, images, and act could have secondary meaning. We cannot agree with Comedy III's threshold assertion that this clip is a trademark.

First, the footage at issue here was clearly covered by the Copyright Act, 17 U.S.C. § 106, and the Lanham Act cannot be used to circumvent copyright law. If material covered by copyright law has passed into the public domain, it cannot then be protected by the Lanham Act without rendering the Copyright Act a nullity. *See, e.g., Smith v. Chanel, Inc.,* 402 F.2d 562, 565 (9th Cir.1968). Issues of secondary meaning are not the point here, but rather the question is whether Comedy III has articulated a trademark interest in the clip which would prevent New Line from using it in a motion picture without Comedy III's permission.

Second, the fact that other film producers choose to pay Comedy III a fee that they may not have to does not obligate New Line to follow suit, if it is not legally obliged to do so. *Cf. In re Application of the Wella Corp.,* 565 F.2d 143, 144 n. 2 (C.C.P.A.1977) (stating that evidence of competitors' discontinuance of use of a mark after the threat of legal action "shows a desire to avoid litigation rather than distinctiveness of the mark").

To pad its fanciful argument, Comedy III recites a litany of cases outlining the scope of protection under Section 43(a) of the Lanham Act. It notes that this Court has held that the Lanham Act extends to: a celebrity's persona in *White v. Samsung Electronics America, Inc.,* 971 F.2d 1395 (9th Cir.1992); a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic in *Waits v. Frito–Lay, Inc.,* 978 F.2d 1093 (9th Cir.1992); and unique physical characteristics in *Wendt v. Host International, Inc.,* 125 F.3d 806 (9th Cir.1997). Comedy III also marshals the holdings of the Trademark Trial and Appeals Board, citing cases that have held that the protection of Section 43(a) extends to: the act performed by a character; the name of a radio character; and the name "Johnny Carson." Finally, Comedy III also notes that other courts have provided Lanham

Act protection to the name "Tarzan" and a recognizable car from a movie.

These citations are unhelpful. With the exception of one case that purportedly extends trademark protection to the act performed by a character—*In re Florida Cypress Gardens, Inc.,* 208 U.S.P.Q. 288 (T.T.A.B.1980)—none of these precedents bears upon the question presented by this case.

First, *White* involved the commercial use of Vanna White's likeness in a television advertisement to sell Samsung products. Not only was the mark at issue clearly the celebrity's persona, and not merely a clip of her previous work, but it was used in a purely commercial vehicle: an advertisement. New Line did not, in its use of the clip, create simulacra of The Three Stooges to sell a product. Second, in *Waits,* the case involved another television commercial, this time one in which the voice of renowned recording artist, Tom Waits, was imitated for the purpose of selling defendant's product. Again, the material at issue in this case is not a replication of some distinctive aural idiosyncrasy of The Three Stooges' voices, but rather an unadulterated recording of The Three Stooges themselves from one of their films. As for *Wendt,* the case involved the physical likenesses of Norm and Cliff of *Cheers* fame—George Wendt and John Ratzenberger—being duplicated by animatronic robots, which were placed in airport bars across the country. Again, *Wendt* involved the pure physical persona of the celebrities at issue, not footage of their performances, which is covered by copyright law. The other cases cited by Comedy III—*In re Folk,* 160 U.S.P.Q. 213 (T.T.A.B.1968); *In re Carson,* 197 U.S.P.Q. 554, 555 (T.T.A.B.1977); and *Edgar Rice Burroughs, Inc. v. Manns Theatres,* 195 U.S.P.Q. 159 (C.D.Cal.1976)—involved only the *names* of celebrities, not their actual performances.

The only case that Comedy III cited for the extension of Lanham Act protection to the *act performed by a character* was *Flor-ida Cypress,* 208 U.S.P.Q. at 292. That case also, however, proved not to address a situation similar to the one at issue here. The name of the act, rather than the act itself, was what the parties contested in that litigation. Nowhere has New Line even mentioned the name of The Three Stooges in either the film or its marketing thereof, and neither side suggests that it is the name of The Three Stooges that is the mark being contested here.

Essentially, Comedy III is arguing that the clip at issue falls under the protection of the Lanham Act because it contains elements that in other contexts might serve as trademarks. Had New Line used the likeness of The Three Stooges on t-shirts which it was selling, Comedy III might have an arguable claim for trademark violation. But we will not entertain this expedition of trademark protection squarely into the dominion of copyright law, to allow for Lanham Act coverage of a piece of footage taken directly from a film by The Three Stooges. Comedy III's assertion that this clip is itself a collection of trademarks of The Three Stooges is unconvincing.

The absence of a trademark is fatal to all of Comedy III's claims. We therefore do not need to speculate as to what our decision might have been on remaining issues.

## III

For the foregoing reasons, we conclude that the clip of The Three Stooges film used in *The Long Kiss Goodnight* is not an enforceable trademark. We therefore affirm the district court's dismissal of Comedy III's First Amended Complaint.

AFFIRMED.