Filed 3/15/24 (unmodified opn. & previous mod. order attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAMANTHA WOOD,<br><br>Petitioner and Appellant,<br><br>v.<br><br>SAN FRANCISCO COUNTY SUPERIOR COURT,<br><br>Defendant and Respondent. | A168463<br><br>(San Francisco County Super. Ct. No. CNC23557879)<br><br>**ORDER MODIFYING OPINION** |

BY THE COURT:

The opinion filed herein on March 14, 2024, is modified as follows.

On page 1, the San Francisco County Superior Court Case No. is modified to read:

(San Francisco County
Super. Ct. No. CNC23557879)

This modification does not effect a change in the judgment.


Date: 3/15/24                                          _____

                                                                    Stewart, P. J.

1

Filed 3/15/24 Order modifying published opinion filed 3/14/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAMANTHA WOOD,<br><br>Petitioner and Appellant,<br><br>v.<br><br>SAN FRANCISCO COUNTY SUPERIOR COURT,<br><br>Defendant and Respondent. | A168463<br><br>(San Francisco County Super. Ct. No. SCNC2355789)<br><br>**ORDER MODIFYING OPINION** |

BY THE COURT:

The opinion filed herein on March 14, 2024, is modified as follows.

On page 1, the San Francisco County Superior Court Case No. is modified to read:

(San Francisco County
Super. Ct. No. SCNC2355789)

This modification does not effect a change in the judgment.


Date: 3/15/24                                    _____

                                                                        Stewart, P.J.

1

Filed 3/14/24 (unmodified opinion)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| SAMANTHA WOOD, Petitioner and Appellant, v. SAN FRANCISCO COUNTY SUPERIOR COURT, Defendant and Respondent. | A168463 (San Francisco County Super. Ct. No. SCNC2366789) |

Appellant Samantha Wood filed a petition for name change, to change her name to Candi Bimbo Doll, a name by which she has long been known. No opposition was filed, and no hearing was held. But a trial judge did some research and, citing to a California case, a 34-year-old law review article, and TikTok, filed a 33-line order denying the petition. We conclude that denial was error, and we reverse.

**BACKGROUND**

On April 12, 2023, representing herself, appellant Samantha E. Wood filed a petition for change of name. The petition was on the Judicial Council Form and sought to change her name to Candi Bimbo Doll, and asserted this basis for the change: "This is an identity I have pursued well over a decade; I have already embraced it and taken numerous, permanent steps to secure it. The name is the last thing left. I promise I know what I'm requesting." The petition was signed under penalty of perjury.

No opposition was filed to the petition. No hearing was held.

On July 14, 2023, the trial court entered an order denying the petition, which order provided in its substantive entirety as follows:

"Petitioner requests to change her name to 'Candi Bimbo Doll.' Petitioner here asserts that she has pursued the identity for well over a decade, has 'already embraced it, and taken numerous steps to secure it. The name is the last thing left.'

"A person has a common law right to change their name to 'Candi Bimbo Doll' without the necessity of any legal proceeding. (California Code of Civil Procedure (CCP) 1279.5(a).) A CCP 1276 proceeding to change a person's name merely provides a public record of the name change. (*Weathers v. Superior Court* (1976) 5[4 C]al.App.3d 286, 288.)

"However, no person has a <u>statutory right</u> to officially change their name to a name universally recognized as being offensive. (*Lee v. Superior Court* (1992) 9 Cal.App.4th 510, 514 [(*Lee*)].)

"Although the word 'bimbo' has sometimes been used to mean a prostitute, the Oxford English Dictionary says it's used now as a derogatory term for 'a young woman considered to be sexually attractive but of limited intelligence.' The derogatory meaning of bimbo, universally, is an attractive but stupid young woman; a foolish, stupid, or inept person.

"The Court is aware of a TikTok trend of the 2020's, post-covid shut down, called 'Bimbofication' which encourages embracing self-love and claiming the word 'bimbo' as their own. While the perception of 'bimbo' may be changing in the TikTok world, the word itself is perceived as offensive and seen as a step backward for women empowerment in our culture. Criticisms such as 'It's still degrading and sexist, and now men think they get to call women that too,' and 'Bimbofication and contemporary femininity is deeply

2

rooted in consumerism and choice feminism. Attaching a couple of progressive words to it doesn't actually make it political.'

" '*One feature of strong insults and epithets is that they tend to shock those at whom they are directed and others who hear.*' (Greenwalt, Insults and Epithets: Are They Protected Speech (1990) 42 Rutgers L. Rev. 287, 291.) Such strong reactions may even result in an unwanted negative physical response against the owner of the name or others around him or her.

"The judiciary should not lend the Great Seal of the State of California to aid a person in a 'social experiment' who proposes to change their name to a word or phrase that is determined to be vulgar and offensive. (*Lee*, *supra*[, 9 Cal.App.4th at p.] 510.)

"Therefore, the petition is denied."

On August 9, represented by counsel, Wood filed an appeal.

## DISCUSSION

### Introduction

Counsel filed an opening brief on Wood's behalf. Consistent with the record below, where there was no opposition to Wood's petition, no respondent's brief was filed. However, our clerk's office received a letter from the San Francisco Superior Court that read as follows: "The above-referenced appellate proceeding has been brought to the attention of the Superior Court of California, County of San Francisco (the Superior Court). Following a review of the record on appeal, the Superior Court does not wish to supplement the analysis and reasoning in the July 14, 2023 order in the underlying name-change petition proceeding, *Petition of Samantha E. Wood* (Superior Court No. CNC-23-557879), and this appellate matter may be considered submitted based on the record and appellant's opening brief."

3

**Denial of the Name Change Was Error**

As Wood described in her petition, she has been known as Candi Bimbo Doll "for well over a decade," a name the law recognizes, as a person has a common law right to change his or her name without applying to a court.  It has been said that a person may refer to themselves by any name they like (*In re Forchion* (2011) 198 Cal.App.4th 1284, 1307 (*Forchion*)), and may do so without the need for any legal proceeding.  (*In re Marriage of Banks* (1974) 42 Cal.App.3d 631, 637 (*Banks*).)  But using a name does not provide a record of the change of name or formally change it.  That is where the statutory procedure for a name change comes into play, which procedure was enacted "in affirmation of [the] common law right and for the purpose of providing for the establishment of a change of name as a matter of public record."  (*Banks, supra*, 42 Cal.App.3d at p. 637, citing *In re Ross* (1937) 8 Cal.2d 608, 609 and *In re Application of Useldinger* (1939) 35 Cal.App.2d 723, 726.)

Code of Civil Procedure sections 1275 et seq. govern the process by which an individual can obtain a formal legal name change in California.  Section 1277 provides that once a petition seeking a name change is filed, the superior court shall make an order setting forth the details of the petition and direct all persons interested in the matter "to appear before the court at a time and place specified . . . ."  (Code Civ. Proc., § 1277, subd. (a)(1).)  That section also directs that notice of the hearing and pending petition be published in a newspaper of general circulation.  (*Id.*, subd. (a)(2)(A).)  Section 1278, subdivision (a)(1) provides that if an objection is filed by any person, the court may examine "on oath" any persons touching the petition or application and may order the name change or dismiss the petition as to the court may seem right and proper.  And section 1278, subdivision (a)(2) goes

4

on to provide that "If no objection is filed . . . the court may, without hearing, enter the order that the change of name is granted."

As the word "may" indicates, the trial court has some discretion on the issue, and we review its ruling for abuse of discretion. (*Forchion, supra,* 198 Cal.App.4th at p. 1304.) And as to how that discretion is to be exercised—how a court is to rule on a petition for name change—cases have held that a change of name "may be denied *only* when there is a showing of 'substantial reason.' " (*Banks, supra,* 42 Cal.App.3d at p. 638, citing *In re Ross, supra,* 8 Cal.2d at p. 610; *In re Trower* (1968) 260 Cal.App.2d 75, 76–77, disapproved on another ground in *In re Marriage of Schiffman* (1980) 28 Cal.3d 640, 647; and *In re McGehee* (1956) 147 Cal.App.2d 25, 26.) As one court described, there must be "substantial and principled reasons" for denying a name change. (See *In re Arnett* (2007) 148 Cal.App.4th 654, 661.) Or as another put it, a person should be able to "adopt any name he or she chooses [citation] so long as the name is not adopted to defraud or intentionally confuse." (*Weathers v. Superior Court, supra,* 54 Cal.App.3d at pp. 288–289.)

None of those descriptions apply here—and the denial was error.

Two cases from this District are instructive. This first is *In re Application of Useldinger, supra,* 35 Cal.App.2d 723, a case from this court. There, Harold Verne Useldinger petitioned to change his name to James J. Britt, a name by which he had been known for 14 years, had been married, had registered the birth of his child, and had conducted tavern businesses. No objections were filed, but one James Edward Britt appeared at the hearing and advised the court of his background and experience, especially one experience when petitioner had put up a sign indicating that a tavern

5

had changed hands and his interaction with petitioner in that tavern. After hearing from James Edward Britt, the trial court denied the petition.

We reversed. We began with discussion of the common law and the statutory developments, and then discussed the principles in *In re Ross*, *supra*, 8 Cal.2d 608, including its admonition that there must be "some substantial reason" for denial of a name change. Then, after discussing what had been put before the court by James Edward Britt, we concluded as follows:

"In reversing the order of the trial court, we do not mean to imply that every petition for change of name must be granted or that the trial court may deny a petition only upon a showing of actual fraud or the actual invasion of the legal rights of another. Each case must stand upon its own particular facts in determining whether a trial court has abused its discretion in denying the petition. We are of the opinion, however, that as the petitioner here had constantly used and had been generally known by the adopted name over a long period of years, it did constitute an abuse of discretion to deny him a legal record of such change upon the unsubstantial showing made in opposition to his petition. Until such time as the common-law right to change one's name may be abrogated by statute, the courts should encourage rather than discourage the filing of petitions for change of name [citation] to the end that such changes may be a matter of public record." (*In re Application of Useldinger*, *supra*, 35 Cal.App.2d at pp. 726–727.) Here, of course, there was no opposition—other than by the trial court.

The second case is *Banks*, where Janice Christensen Banks petitioned to change her name to her maiden name. The trial court denied the petition on the basis that the change could have an adverse effect on their children.

6

After discussing the statutory scheme, our colleagues in Division Four modified the judgment to reflect the name change, concluding as follows:

"Under this statutory scheme, a person who has applied to a superior court for an order changing his [or her] name may obtain an order registering the change if to the court it 'may seem right and proper.' (Code Civ. Proc., § 1278.) Thus, the trial judge is given discretion just as he is under Civil Code section 4362 in dissolution proceedings.

"However, it has been held that a change of name under the Code of Civil Procedure may be denied *only* when there is a showing of 'substantial reason' (*In re Ross*, *supra*, 8 Cal.2d at p. 610; *In re Trower*[, *supra*,] 260 Cal.App.2d [at pp.] 76–77; *In re McGehee*[, *supra*,] 147 Cal.App.2d [at p.] 26) or 'peculiar circumstances' (*In re Useldinger*, *supra*, 35 Cal.App.2d at p. 726). In effect the burden of proof rests on the person who would deny the change, not the person seeking the change.

". . . . Just as public policy favors judicial granting of a name change for correcting the public record, it should also favor the restoration of maiden name in dissolution proceedings." (*Banks*, *supra*, 42 Cal.App.3d at pp. 637–638.)

As quoted above, the trial court noted that the "Oxford English Dictionary says [Bimbo is] used now as a derogatory term for 'a young woman considered to be sexually attractive but of limited intelligence.' The derogatory meaning of bimbo, universally, is an attractive but stupid young woman; a foolish, stupid, or inept person."

We pause here to note that while the dictionary definition quoted seems correct, no support appears for the "foolish, stupid, or inept" person. But even if there were, we do not understand how "inept," for example, can be a basis to reject a name change.

But even if it were, in the very next paragraph the court noted that it was "aware of a TikTok trend of the 2020's, post-covid shut down, called 'Bimbofication' which encourages embracing self-love and claiming the word 'bimbo' as their own"—in other words, a part of a positive trend of women's empowerment on TikTok and in our society.

In a July 2023 column entitled "Greta Gerwig's Barbie Movie is a Feminist Bimbo Classic," a professor at Anglia Ruskin University in the United Kingdom wrote this: "Gerwig's take on Barbie is timely. My research explores the recent feminist reclamation of the 'bimbo' figure. On TikTok, the *#Bimbo trend* sees feminine-presenting content creators *reclaiming* the once derogatory 'bimbo' label and aesthetic. Instead of abandoning femininity to succeed in a patriarchal society, bimbo feminism embraces femininity while supporting women's advancement." (Fletcher, *Greta Gerwig's Barbie Movie is a Feminist Bimbo Classic*, The Conversation (July 19, 2023).) In short, as best we understand it, Bimbofication is using the once derogatory term as a means of empowerment, to build a sense of community—as a positive. The trial court disregarded all that.

The trial court cited one case in support of its denial, *Lee, supra*, 9 Cal.App.4th 510, first cited for the proposition that no one has a "statutory right to officially change their name to a name universally recognized as being offensive," and going on to cite *Lee* at the end of its order for the proposition that "[t]he judiciary should not lend the Great Seal of the State of California to aid a person in a 'social experiment' who proposes to change their name to a word or phrase that is determined to be vulgar and offensive." *Lee* is a far cry from the situation here.

There, Russell Lawrence Lee petitioned to change his name to "Misteri Nigger," on the basis the name would further his goals on social justice. The

8

trial court denied the petition, and the Court of Appeal affirmed, beginning its opinion with the observation that "The proposed surname is commonly considered to be a racial epithet and has the *potential* to be a 'fighting word.' " The court went on to hold that no one has a statutory right to change his or her name to one universally recognized as offensive (*Lee, supra,* 9 Cal.App.4th at pp. 513–514), and that "the trial court's determination that the proposed surname was vulgar, offensive, and a racial slur [was] a substantial and principled reason for denial of the motion." (*Id.* at p. 515.) Finally, the court noted that the proposed name here may also constitute "fighting words," which the court should not sanction, adding "It matters not that appellant's motives may be rooted in a sincere and honest attempt to remove the sting from the word 'n[*****]'or that it may only be uttered in the context of a name. It is the reaction thereto that may cause a breach of the peace." (*Id.* at p. 518.)

The word causing the rejection in *Lee* is perhaps the most inflammatory word in the English language, a word one author described as one that "wreaked symbolic violence, often accompanied by physical violence." (Rahman, *The N-Word: Its History and Use in the African-American Community* (2011) Journal of English Linguistics, p. 6.) It is hard to come up with an adjective adequate to describe a discussion of that word in the same breath as Bimbo.

As also noted, the trial court cited the 1990 Rutgers Law Review article, quoting that "One feature of strong insults and epithets is that they tend to shock those at whom they are directed and those that hear." (Greenwalt, *Insults and Epithets: Are They Protected Speech*? (1990) 42 Rutgers L.Rev. 287, 291.) That article lists numerous—Wood's brief says 53—examples of offensive terms. Bimbo is not among them.

9

In sum and in short, Bimbo is not a fighting word. It is not vulgar. And according to the trial court's description of TikTok and the professor's comments, it is not necessarily offensive.

A business search for Bimbo on the California Secretary of State website reveals that the Secretary lists 17 entities as including the name Bimbo, some of which are as simple as Bimbo, LLC and Bimbo, Inc., a list of which we take judicial notice. (See *Wood v. Superior Court* (2020) 46 Cal.App.5th 562, 580, fn. 2 [taking judicial notice of several pages of DFEH website, and noting that "[w]hile we may not judicially notice the truth of any statement in these materials, we may take notice of the fact that they were made to the public"].) The Secretary of State has no issue with Bimbo.

Nor does the California Department of Motor Vehicles (DMV). The DMV instructions state that it will not issue a personalized license plate that has "sexual connotation" or a "vulgar term or a term of prejudice or hostility." We understand the DMV has issued so many personalized license plates in the name of "Bimbo," "Bimbo 1," "Bimbo 25" etc., that new requests are met with the statement that "the license plate you selected is no longer available."

In all of California jurisprudence, including *Lee*, there are apparently only five published cases upholding the denial of a name change. The other four are: *In re Weingand* (1964) 231 Cal.App.2d 289; *In re Ritchie* (1984) 159 Cal.App.3d 1070; *Forchion, supra,* 198 Cal.App.4th 1284; and *In re Harris* (2023) 94 Cal.App.5th 608, all of which cases involve, in one way or another, confusion. Specifically:

*In re Weingand, supra,* 231 Cal.App.2d 289 involved Eugene Weingand's petition to change his name to Peter Lorie, on the claimed basis that his current last name is hard to pronounce, that he is engaged in show

10

business, and that associates have called him by that name for approximately one year.  Peter Lorre, the movie actor, appeared at the hearing, and along with other witnesses, testified against the name change.  Lorre testified he had been an actor for 42 years and appeared in 150 motion pictures and was working in television.  The Court of Appeal affirmed the denial of the petition on the basis that the name would "confuse the public" and "directly affect the commercial and professional value of the services and performances of Peter Lorre."  (*Id.* at p. 294.)

*In re Ritchie*, *supra*, 159 Cal.App.3d 1070 involved petitioner's attempt to change his name from Thomas Boyd Ritchie III to "III," pronounced "three."  Ritchie's petition alleged that approximately six years prior to his petition, he began using III as his name for the sake of convenience, that he kept using the name because it gave him a greater sense of personal identity, and that his friends, peers, and business associates knew him as III. It further alleged that an official recordation of his new name was essential in order to obtain credit cards and documents such as a driver's license from agencies and financial institutions.  The petition was denied on the grounds that the proposed change to a numeral did not constitute a name change within the meaning of the law, and that the new name was "inherently confusing."  (*Id.* at pp. 1071–1072.)  The Court of Appeal affirmed, noting in part that in light of the modern trend toward high technology and data necessary by computers, "it is not unreasonable to conclude that the usage of numbers for designating or describing persons might cause inherent confusion in public records which, in turn, may well facilitate deception or fraud of individuals, institutions or the public as a whole."  (*Id.* at p. 1074.)

In *Forchion*, *supra*, 198 Cal.App.4th 1284, the trial court held that petitioner, a marijuana advocate with a national reputation, could not change

his name to "NJ weedman.com," the name of his website, including the ".com." The Court of Appeal affirmed, holding that "domain names were created for use on the Internet and should be limited to assisting a user in finding a desired Web site. The court reasoned that petitioner could lose the use of the Web site by failing to make periodic registration payments or by breaching the registration agreement, in which event the Web site name could be registered to someone else, and, at the same time, petitioner could keep his new personal name, resulting in confusion. But even if petitioner maintained the website, the name "might be so similar to another Web site name or trademark that the multiple usage would create confusion." (*Id.* at pp. 1287, 1312.)

*In re Harris*, *supra*, 94 Cal.App.5th 608 involved Andre Pierre Harris's petition to change his name to ":Minko: Yona-Gvinge: El-Bey®." The trial court denied the petition because Harris had outstanding warrants, a denial the Court of Appeal affirmed. (*Id.* at pp. 610, 611, 613.)

Confusion. Confusion. Confusion. Confusion. There is no confusion here.

As noted above, we review the trial court's decision for abuse of discretion. As to what that entails, we addressed the subject at some length in *People v. Jacobs* (2007) 156 Cal.App.4th 728, noting among other things that " ' " 'The discretion of a trial judge is not a whimsical, uncontrolled power, but a legal discretion, which is subject to the limitations of legal principles governing the subject of its action, . . .' " The scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ." Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse" of discretion. [Citation.]' . . . [¶] [T]he

12

'legal principles that govern the subject of discretionary action vary greatly with context. [Citation.] They are derived from the common law or statutes under which discretion is conferred.' [Citation.]" (*People v. Jacobs*, *supra*, 156 Cal.App.4th at p. 737; accord, *People v. Williams* (2021) 63 Cal.App.5th 990, 1000–1001.) As our Supreme Court distilled it in *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 773, "the court's discretion is not unlimited," but rather "must be exercised within the confines of the applicable legal principles."

As shown above, that law provides that "public policy favors granting a name change" and courts should "encourage rather than discourage" it. The trial court did not even mention these, or other governing principles, and essentially turned the law on its head. Moreover, there must be "substantial and principled reasons" for denying a name change. No such reason is present here.

## DISPOSITION

The order denying the petition to change name is reversed, and the matter is remanded to the trial court to enter a new order granting the petition.

_____
Richman, J.

We concur:


_____
Stewart, P. J.


_____
Miller, J.


*Wood v. San Francisco County Superior Court* (A168463)

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court; |
| Trial Judge: | Honorable Gail Dekreon; |
| Attorney for Petitioner and Appellant, Samantha Wood: | Law Office of James Reilly, James Reilly; |
| Attorney for Defendant and Respondent, Superior Court of California, County of San Francisco: | Superior Court of California, County of San Francisco, Stella Pantazis, Managing Attorney and General Counsel. |